(982 P.2d 400)

No. 78,863

WILLIAM WILSON, *Appellee/Cross-appellant,* v. PHILIP KNIGHT, M.D., *Appellant/Cross-appellee.*

Opinion filed June 25, 1999.

*Eldon L. Boisseau* and *Anne M. Hull*, of Turner and Boisseau, Chartered, of Wichita, for appellant/cross-appellee.

*Gerard C. Scott*, of Prochaska & Scott, of Wichita, for appellee/cross-appellant.

*Gary D. White, Jr.*, of Palmer, Lowry, Leatherman & White, LLP, of Topeka, for *amicus curiae* Kansas Trial Lawyers Association.

Before LEWIS, P.J., GREEN and KNUDSON, JJ.

KNUDSON, J.: Dr. Philip Knight appeals from a jury verdict awarding William Wilson $100,000 in damages caused by Knight's medical malpractice. Knight argues the court erred in permitting one of Wilson's claims of negligence to be considered by the jury. Wilson cross-appeals, arguing the district court erred in granting summary judgment against him on his claim for medical expenses incurred during his minority.

On August 30, 1990, 14-year-old William Wilson began experiencing stomach pain. He went to see Dr. Pennington, his pediatrician, who later admitted him to the hospital and referred him to Dr. Knight, a pediatric surgeon. Dr. Knight was of the opinion Wilson had appendicitis, based on his elevated white blood count and a medical history consistent with that diagnosis. However, Dr. Knight decided not to perform an appendectomy then as Wilson had not met a certain diagnostic threshold. Wilson was eventually discharged from the hospital on September 3, after Dr. Knight concluded appendicitis was less likely than first suspected because Wilson's white blood count had decreased and he could take in fluids.

Dr. Knight next saw Wilson on September 9, as Wilson's pain had not improved since his discharge from the hospital. Dr. Knight performed an appendectomy that same day. A few days after the operation, Wilson began noticing one of his testicles had swollen, and he was continuing to experience pain. Wilson was discharged on September 15, although he felt extremely weak.

Wilson subsequently visited Dr. Hyder on September 20. Dr. Hyder, who is a colon and rectal surgeon, discovered a possible infection in Wilson's abdominal cavity. Wilson was again admitted to the hospital where the infection was diagnosed as a pelvic abscess. This abscess was drained at least twice, and it was subsequently discovered Wilson had developed a rectovesical fistula, which Dr. Hyder described as "a communication between the rectum and the bladder." Due to the development of this fistula, a catheter and colostomy were installed which Wilson wore until June of the next year.

After his 18th birthday, Wilson filed this malpractice claim seeking to recover damages, including past medical expenses of $86,411.09. Before trial, the district court ruled that as a matter of law Wilson had no cause of action for past medical expenses. During the trial, Wilson introduced medical articles into evidence over the objection of Dr. Knight. At the close of Wilson's case in chief, Dr. Knight's motion for directed verdict upon the claim he failed to diagnose and test for post-operative infection was denied. At the conclusion of trial, the district court included the same claim as one of Wilson's contentions of negligence in its jury instructions. The jury found Dr. Knight negligent and awarded Wilson $100,000. Knight's motion for new trial was denied.

On appeal, Dr. Knight raises two issues: (1) Did the district court err in admitting medical journal articles as independent evidence to establish breach of the standard of care; and (2) did the district court err in denying defendant's motion for directed verdict and motion for new trial on the claim of failure to diagnose and treat for postoperative infection? Wilson has cross-appealed from the district court's decision denying recovery of medical expenses.

## ADMISSION OF MEDICAL TREATISES

Several times during the trial, Wilson's counsel introduced various journal articles and treatises under the learned treatise exception to the Kansas hearsay rule, K.S.A. 1998 Supp. 60-460(cc).

Dr. Knight contends the admission of this evidence was error because the evidence was not relevant to the issues involved in the case, the evidence was outside the scope of the witness' testimony, the evidence was too confusing to the jury without any helpful testimony from the witness, the expert did not rely on the articles in reaching conclusions, and the articles and texts constituted hearsay testimony as the author was not available for cross-examination.

The admission or exclusion of evidence is within the district court's sound discretion, subject to recognized exclusionary rules. *State v. Schultz*, 252 Kan. 819, Syl. ¶ 9, 850 P.2d 818 (1993). Judicial discretion is abused only if no reasonable person would take the view adopted by the district court. *Labette Community College*

*v. Board of Crawford County Comm'rs*, 258 Kan. 622, Syl. ¶ 1, 907 P.2d 127 (1995).

K.S.A. 1998 Supp. 60-460 states:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissable except:

. . . .

"(cc) *Learned treatises.* A published treatise, periodical or pamphlet on a subject of history, science or art, to prove the truth of a matter stated therein, if the judge takes judicial notice, or a witness expert in the subject testifies, that the treatise, periodical or pamphlet is a reliable authority in the subject."

The Kansas learned treatise exception to the hearsay rule permits the admission into evidence of a medical treatise as independent substantive evidence if reliability and relevancy are established. See K.S.A. 60-401(b); *Zimmer v. State*, 206 Kan. 304, 309, 477 P.2d 971 (1970). This exception is rather unique. Most jurisdictions have more restrictive rules. See 6 Wigmore on Evidence §§ 1690-1700 (Chadbourn rev. 1976). The more traditional approach is Fed. R. Evid. 803(18), under which learned treatises are not admitted as independent substantive evidence; instead, authoritative treatises are referred to by testifying experts to support their opinions or to impeach an expert when cross-examined by an adversary. Under the federal rule, relevant statements from a treatise may be read into the record, but no part of the writing itself is admitted as evidence.

The Kansas learned treatise exception requires special vigilance by a trial judge to make certain a "garbage in" process does not occur or that the jury is left to ferret through learned treatises that the average juror does not understand and may misconstrue. In 1 Gard and Casad's Kansas C. Civ. Proc. 3d Annot. § 60-460, p. 279 (1997), the authors noted:

"This exception, like a number of the others, while very desirable, is one which requires a good deal of discretionary supervision by the trial judge. The treatise, when offered in evidence must aid rather than confuse, and if the risk of confusion is great and the value of the treatise comparatively slight it will be excluded."

We also believe the objection noted in *The State v. Baldwin*, 36 Kan. 1, 17, 12 Pac. 318 (1886), that "the great weight of authority

is that [learned treatises] cannot be admitted . . . this upon the theory that the authors did not write under oath, and that their grounds of belief and processes of reasoning cannot be tested by cross-examination" has merit, and the underlying rationale should continue to give a trial judge pause before admitting learned treatises as independent evidence under K.S.A. 60-460(cc). Nevertheless, we recognize application of this hearsay rule must be considered on a case by case basis, weighing the probative value of the evidence against its potential prejudicial impact.

Turning to the facts of this case, we note each proffered treatise was admitted only after predicate testimony under K.S.A. 1998 Supp. 60-460(cc) was presented. The more substantial question is whether a particular treatise was relevant to a material issue in the case. The main issues in the case were whether Dr. Knight failed to timely diagnose and treat Wilson's appendicitis, whether he failed to administer antibiotic treatment after the appendectomy, and whether he failed to diagnose and treat Wilson's post-operative infection.

We are satisfied after reviewing each of the six exhibits objected to by Dr. Knight that the district court did not commit reversible error. Four of the exhibits are clearly relevant to the case. These four exhibits deal with the use of antibiotics to cover bacterial infections in cases of perforated appendicitis, the use of a 5- to 10-day course of antibiotics to prevent and resolve intra-abdominal infections, the use of antibiotics in complicated appendectomies for up to 10 days after the surgery, and a general discussion of the diagnosis and treatment of appendicitis.

Two of the exhibits do not seem to be relevant as they dealt with how soon after an appendectomy a child should be discharged from the hospital in order to keep costs down, and a discussion regarding diagnosing diseases which appear to be appendicitis but are not. However, even if the court erred in admitting these two articles, the error was harmless. It is highly unlikely, due to the complicated nature of the issues in the case and the topics involved in the exhibits, the jury was confused or prejudiced by the admission of two irrelevant articles. See *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 308, 836 P.2d 1102 (1992) (holding harmless error is

error which does not prejudice the substantial rights of a party and affords no basis for a reversal of judgment).

## CLAIM FOR FAILURE TO DIAGNOSE AND TREAT

The jury was instructed it could find Dr. Knight liable for failing to diagnose Wilson's appendicitis and to perform a timely appendectomy; failing to administer appropriate post-operative I.V. antibiotic therapy; or for failing to diagnose and treat Wilson's post-operative infection. The jury was also instructed that an agreement as to which specific negligent act or omission it relied on to find Dr. Knight liable was not required.

At the close of Wilson's evidence, Dr. Knight moved for a directed verdict, alleging in part that no evidence existed to prove he caused Wilson's injuries by failing to diagnose or treat his infection. The court denied this motion. After the trial, Dr. Knight moved for a judgment notwithstanding the verdict arguing in part no causation was shown. The district court denied this motion. Dr. Knight contends the district court erred in overruling his motions for directed verdict and judgment notwithstanding the verdict because no evidence existed to prove Dr. Knight's failure to diagnose and treat Wilson's post-operative infection was the proximate cause of Wilson's damages.

K.S.A. 60-250 allows a litigant to move for a directed verdict and for judgment notwithstanding the verdict. *Turner v. Halliburton Co.*, 240 Kan. 1, 6, 722 P.2d 1106 (1986). In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. This rule applies when appellate review is sought of a motion for directed verdict and also to a motion for judgment notwithstanding the verdict. 240 Kan. at 6-7.

According to Dr. Edney, one of Wilson's expert witnesses, Dr. Knight deviated from the standard of care in not immediately diagnosing Wilson with appendicitis and performing an appendectomy. Further, Dr. Edney opined Wilson would not have devel-

oped his subsequent complications if he would have undergone an appendectomy during his initial hospitalization. Additionally, Dr. Edney testified Dr. Knight should have noticed during the appendectomy that Wilson's appendix was perforated, requiring a 5- to 10-day course of antibiotics after the operation. If Wilson had been treated with this protracted course of antibiotics, Edney testified, Wilson more likely than not would not have suffered all the postoperative complications.

Dr. Bronsther, another of Wilson's experts, testified the failure to perform an appendectomy initially deviated from the standard of care and would have prevented Wilson's post-operative complications. Further, Dr. Bronsther testified Dr. Knight was negligent in performing the surgery, as he allowed toxins to invade the peritoneal cavity, causing the abdominal abscess to form which eventually led to the fistula. Dr. Bronsther further opined Wilson should have been given up to 10 days of antibiotic treatment. Further, numerous symptoms should have indicated the presence of an infection and discharging Wilson from the hospital on September 15 also deviated from the standard of care. Finally, Dr. Bronsther stated that if Wilson would have been treated within the standard of care during his surgery, and been given a 5- to 7-day course of antibiotic treatment, he most likely would not have developed the complications. Antibiotics help the body combat infection, Dr. Bronsther stated, and they would have helped in this case.

Viewing the evidence in the most favorable light to Wilson as the district court was required to do in ruling on a motion for a directed verdict or a motion notwithstanding the verdict, all three bases of liability were properly submitted to the jury. Although the evidence concerning the diagnosis and treatment of Wilson's postoperative infection was not as abundant as evidence supporting the first two bases of liability, reasonable minds could reach different conclusions regarding whether causation on the third basis was proven. Dr. Bronsther's testimony that antibiotics help cure infection and would have helped in this case tends to prove Dr. Knight's failure to treat Wilson with antibiotics after the surgery led to his infection. While this evidence could also support the second basis,

it would be sufficient to support a finding of liability against Dr. Knight.

## CLAIM FOR MEDICAL EXPENSES

Wilson cross-appeals from the district court's grant of partial summary judgment against him on his claim for medical expenses incurred during his minority and paid for by his parents or their insurance company.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 (1998). Whether a plaintiff may claim medical expenses incurred during his minority as an element of damage in a suit against the tortfeasor brought after the plaintiff reaches the age of majority is a question of law. Thus, this court has unlimited review. See *State v. Donlay*, 253 Kan. 132, 134, 853 P.2d 680 (1993).

The general rule throughout the United States is that unless the child is emancipated, the parent rather than the child is entitled to recover medical expenses that have been incurred to provide care and treatment. See 59 Am. Jur. 2d, Parent and Child § 104, p. 243; 32 A.L.R.2d 1060, 1069. This general rule is also recognized in the Restatement (Second) of Torts § 703 (1976).

The underlying rationale for the general rule is stated in *Garay v. Overholtzer*, 332 Md. 339, 366, 631 A.2d 429 (1993):

"The rule vesting in the parent the right to recover medical expenses is grounded in the proposition that the parent has a duty to care for the child, and that as a result of that duty, the parent, not the child, is contractually liable for medical expenses incurred on the child's behalf. *See* 4 J.G. Sutherland, *Law of Damages*, § 1250, at 4737-38 (4th ed. 1916) (a minor living with his parents cannot recover medical expenses as items of damages because the child is not liable for them, unless the minor has paid the bill, or is legally bound to pay it); 2 Arthur G. Sedgwick, *Measure of Damages* § 486b, at 932-33 (9th ed. 1912) ('Since the parent is obliged to support the child during minority, and therefore to furnish medical attendance, the minor cannot recover medical expenses resulting from the injury, unless, as may happen, the minor's estate has become responsible for them.') Thus, if a minor is contractually liable for medical expenses, it follows that

the minor should be able to recover those expenses from a tortfeasor. Other jurisdictions have examined this question. *Moses v. Akers*, 203 Va. 130, 122 S.E. 2d 864 (1961), set forth four circumstances which constitute exceptions to the general rule that parents possess the exclusive right to recover a minor's pre-majority medical expenses. These include the following: (1) when the minor child has paid or agreed to pay the expenses, (2) when the minor child is legally responsible for payment, such as by reason of emancipation, or the death or incompetency of his parents, (3) when the parents have waived or assigned their right of recovery in favor of the minor child, or (4) when recovery of expenses is permitted by statute. *Moses v. Akers* at 132, 122 S.E.2d at 866 (citing 43 C.J.S. *Infants* § 104(d); Tellier, Annotation, *supra*, 32 A.L.R.2d 1060)."

We have not found a Kansas case precisely on point, but the following cases are strongly indicative that Kansas follows the general rule.

In *Balandran v. Compton*, 141 Kan. 321, 322, 41 P.2d 720 (1935), the injured child's father brought an action against the tortfeasor to recover medical and hospital expenditures incurred for care and treatment of the child. This action was *after* the child's successful action to recover damages arising from the accident. When judgment was entered in favor of the defendant, the father appealed, arguing that the defendant's liability had previously been settled in the prior action in which his son had recovered. The Supreme Court held that the prior litigation settled nothing between the father and the defendant.

In *Henry v. Railway Co.*, 98 Kan. 567, Syl. ¶ 2, 158 Pac. 857 (1916), the Supreme Court held that a judgment in favor of the son in an action brought to recover damages for personal injury is not conclusive or binding against the same defendant in another action brought by the father *in his own right* to recover for loss of the son's services. (Emphasis added.)

In *Abeles v. Bransfield*, 19 Kan. 16, Syl. ¶ 2 (1877), where a mother as next friend brought her minor son's action for personal injuries and included a claim for medical expenses incurred, the Supreme Court held that by "commencement and prosecution of such action, it must be conclusively presumed that the mother *relinquished and gave* to her son" the cause of action to recover the medical expenses. (Emphasis added.)

One of Wilson's contentions is that medical expenses are necessaries, and a minor is liable for the value of necessaries furnished; therefore, he is the real party in interest who has a cause of action to recover such expenses from a tortfeasor. That a minor is bound by his or her contracts for necessaries has long been the law in Kansas. See K.S.A. 38-102; *State v. Weatherwax*, 12 Kan. 463, 464 (1874). And we agree medical expenses are necessaries. We do not agree that this means *ipso facto* the minor has the right to recover medical expenses against a tortfeasor. As we have previously noted, the law obligating a minor to bear responsibility for contractual necessaries and the law vesting in the parent the right to recover medical expenses incurred for a minor child have peacefully co-existed in virtually every jurisdiction that has addressed this issue. Certainly, as was noted in *Garay*, 332 Md. 339, there are exceptional circumstances that would permit a minor to pursue recovery of his or her medical expenses. However, no exceptional circumstances exist in the case now before use.

We conclude that Kansas follows the general rule that a parent holds the cause of action to recover medical expenses incurred on behalf of a minor child absent exceptional circumstances. In the case at bar, Wilson's parents through their insurance company paid his medical expenses, and there has been no showing of assignment by the parents or other exceptional circumstances that would permit recovery by Wilson. Accordingly, we hold the district court did not err in granting partial summary judgment upon this issue.

Affirmed.