(6 P.3d 432)
No. 82,517

DENNIS L. FRANS, Special Administrator of the Estate of Heather L. Frans, deceased and DENNIS L. FRANS and JANET L. FRANS, heirs-at-law of the deceased, Heather L. Frans, *Appellants,* v. ROGER D. GAUSMAN, D.D.S., *Appellee.*

Opinion filed May 12, 2000.

*Edward J. Hund* and *Steven W. Cole*, of Bradshaw, Johnson & Hund, of Wichita, for appellants.

*Kenneth E. Peirce*, of Peirce Law Office, of Hutchinson, for appellee.

Before ELLIOTT, P.J., BEIER, J. and PADDOCK, S.J.

BEIER, J.: This is a wrongful death case against a dentist responsible for treating plaintiffs' daughter, Heather Frans. Plaintiffs Dennis and Janet Frans appeal the jury's verdict in favor of defendant Roger D. Gausman, D.D.S.

Heather went into respiratory arrest while having her teeth cleaned at Gausman's office on February 1, 1994. She was autistic and developmentally delayed; at the time of her death, she was 19

years old and weighed approximately 40 pounds. Heather's physical and developmental challenges had made it difficult over the years to brush her teeth or obtain other dental care because she was sensitive to having objects near or in her mouth.

Heather had been one of Gausman's patients since 1982. Between 1982 and February 1, 1994, she was seen by Gausman and his staff on ten occasions. On the day of her respiratory arrest in the dentist's chair, her father had given her Tylenol III, which contains codeine, to help her relax before bringing her to Gausman's office.

Three members of Gausman's staff were with Heather when she suffered the respiratory arrest. One was polishing Heather's teeth; another, at Heather's head, was observing and holding her; a third was holding Heather's hands during the procedure. When Heather's lips turned blue and her eyes rolled back, one of the staff swept the back of Heather's throat with the vacuum. No foreign objects that would obstruct Heather's airway were detected. Gausman, who was out of the room, was paged, and he successfully moved oxygen into Heather's lungs via mouth-to-mouth resuscitation until emergency medical personnel (EMS) arrived.

The arrival of the emergency team did not, in this case, improve the situation. In their attempt to intubate Heather, the EMS inserted the airway tube into her esophagus, rather than her trachea. Efforts to resuscitate Heather when she reached the hospital were ultimately unsuccessful.

At trial, plaintiffs sought to introduce evidence that Gausman may have used one or more of two behavioral control techniques on Heather on the day of her death: "Hand Over Mouth" (HOM) or "Hand Over Mouth With Airway Restriction" (HOMAR). Each technique involves blocking the patient's airway in order to induce cooperation with treatment. Plaintiffs' theory was based primarily on evidence they had gathered from former patients and staff of Gausman, who told the Franses that the dentist had used such techniques on them or on difficult patients generally. Plaintiffs do not now assert—and have never asserted—that they had any evidence such techniques had ever been used on Heather. And Gaus-

man and his staff testified at trial that they did not use HOM or HOMAR on Heather on the day of her death.

The trial court permitted plaintiffs to introduce some of their evidence on HOM and HOMAR, despite the uniform denials of the defendant and his staff. One former employee and one current employee were permitted to testify that they had observed Gausman use the HOM or HOMAR techniques to calm and control child patients. Plaintiffs' expert, Dr. Michael Graham, was allowed to testify that Heather died because of a mechanical obstruction of her airway and that such an obstruction *could* have resulted from the administration of HOM or HOMAR.

On the other hand, the trial court prevented the introduction of certain HOM and HOMAR evidence, ruling that plaintiffs could not introduce testimony from other patients about Gausman's use of the techniques or ask Gausman on cross-examination whether he had ever used the controversial techniques on patients other than Heather.

For its part, the defense presented evidence from the pathologist who conducted the autopsy performed on Heather's body; he testified that her blood contained a toxic level of codeine. Further, defense expert Dr. Phillip Dellinger testified that excessive codeine could decrease respiratory functions and opined that Heather's death was related to codeine ingestion.

On appeal, plaintiffs claim that the trial judge abused his discretion in disallowing certain testimony during their case in chief and during rebuttal about defendant's use of HOM or HOMAR on other patients and in limiting cross-examination of defendant himself on those topics. Plaintiffs also assert that the trial judge abused his discretion in failing to order a new trial based on what they describe as newly discovered evidence, in failing to give the jury a res ipsa loquitur instruction, and in permitting Dellinger to testify to an opinion not set forth in the report from him that was produced during discovery. We have carefully considered each of these arguments and affirm.

### Testimony Regarding Other Patients

Plaintiffs are correct that our standard of review for a trial judge's

decisions on the admission or exclusion of evidence is abuse of discretion. "Judicial discretion is abused only if no reasonable person would take the view adopted by the district court." *Wilson v. Knight*, 26 Kan. App. 2d 226, 228, 982 P.2d 400 (1999).

We are satisfied with the trial judge's line drawing in this case. In short, he ruled that plaintiffs would be permitted to introduce evidence regarding the defendant's use of HOM or HOMAR on Heather, if any. They were prevented from introducing some but not all of their evidence on his use of either or both of the techniques on others.

The trial court specifically considered whether plaintiffs had amassed sufficient evidence to qualify for admission to establish a habit or custom under K.S.A. 60-449 and K.S.A. 60-450 and found that they had not. A habit "designates an essentially mechanical course of action." *State v. Gonzales*, 245 Kan. 691, 701, 783 P.2d 1239 (1989). The trial judge sensibly concluded that plaintiffs did not have proof of such a mechanical course of action here. We will not disturb his conclusion, because it is plain that a reasonable person could agree with him. There was no abuse of discretion.

Moreover, the trial court's rulings on admissibility did not completely thwart plaintiffs' effort to admit evidence of Gausman's use of the techniques with other patients. At least two witnesses, one a former Gausman employee and another one of the staff members who was with Heather when she went into respiratory arrest, were permitted to testify that they had observed Gausman use the techniques to calm and control child patients. "There is no abuse of discretion in a court not allowing testimony to be further developed where the essentials of the testimony are known and there is no indication that further evidence would have been helpful to the court." *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 765, 815 P.2d 1125, *rev. denied* 249 Kan. 776 (1991).

### Cross-examination of Defendant

On direct examination, Gausman testified that he did not perform HOMAR on Heather on February 1, 1994. On cross-examination, he said that he was opposed to doing HOMAR and that HOM would be contraindicated for a patient like Heather because

she generally breathed through her mouth. He recognized that one member of his staff had said he used HOM on patients from time to time. Plaintiffs take issue with the judge's ruling that their counsel could not follow up with a question about whether Gausman had *ever* practiced HOMAR.

"[T]he extent of cross-examination for purposes of impeachment lies within the sound discretion of the trial court and, absent proof of clear abuse, the exercise of that discretion will not constitute prejudicial error." *State v. Osby*, 246 Kan. 621, 631, 793 P.2d 243 (1990).

The trial judge stated: "I think I've allowed you to go as far as I can go with the questioning of the hand over mouth." He allowed plaintiffs' counsel to cross-examine Gausman about the usage of these techniques on Heather but said that allowing counsel to question defendant about general usage in the dental office would have been cumulative. The judge concluded: "I think I've allowed you to show that it's a practice that has been utilized. I think that each of these [questions] have [*sic*] been asked." Again, we do not believe the trial judge's rulings on the extent of cross-examination amount to an abuse of discretion. In addition to the admitted evidence already discussed, Gausman admitted that the questioned techniques could cause an acute mechanical airway obstruction in a patient like Heather.

### Rebuttal Witnesses

Plaintiffs also take issue with the trial court's refusal to allow certain rebuttal witnesses who would have testified that Gausman performed HOMAR upon them. As with the two previous issues, the standard of review is abuse of discretion. *Wilson*, 26 Kan. App. 2d at 228.

The Franses acknowledge that they wanted to use this evidence to attack Gausman's credibility. Evidence of specific instances of conduct is not generally admissible to prove a trait of a witness' character or the quality of a person's conduct on a particular occasion. See K.S.A. 60-422(d); K.S.A. 60-447; K.S.A. 60-448; *Herbstreith v. de Bakker*, 249 Kan. 67, 76-77, 815 P.2d 102 (1991); *State v. Woods*, 222 Kan. 179, 187-88, 563 P.2d 1061 (1977). In addition,

the record reflects that, to the extent Gausman denied using HOM or HOMAR on patients other than Heather, there was contrary testimony from two staff members. The trial court did not abuse its discretion in disallowing the testimony of certain rebuttal witnesses.

### Motion for New Trial

Our standard of review on this issue is well established: "Subject to limited exceptions . . . the decision of whether to grant or deny a new trial rests in the sound discretion of the district court and will not be reversed on appeal unless a clear abuse of discretion is shown." *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 15, 899 P.2d 1013 (1995). A new trial may be granted where there is "newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial." K.S.A. 60-259(a).

On a motion for new trial, the moving party "bears the burden of proving that (1) the evidence is new and could not have been produced at trial with reasonable diligence, and (2) the evidence is of such materiality that there is a reasonable probability it would produce a different result upon retrial." *State v. Mullins*, 267 Kan. 84, 91, 977 P.2d 931 (1999).

The Franses based their motion on an affidavit from another former employee of Gausman, who asserted that Gausman customarily used HOM and HOMAR and related one particular incident involving a child patient. In their appellate brief, plaintiffs do not demonstrate that this is new evidence or that it could not have been produced at trial through the exercise of reasonable diligence. Rather, they merely argue that this evidence would have corroborated the testimony of Carleeta Deetz, another former employee who *did* testify at trial. Plaintiffs also do not enlighten us as to how this evidence would, with reasonable probability, have changed the outcome.

As previously discussed, other testimony showed that HOM and HOMAR were used by Gausman to control apprehensive children. The information from the other former staff member was cumulative and is unlikely to have changed the jury's decision. There

was no abuse of discretion in the denial of plaintiffs' motion for new trial.

### Res Ipsa Loquitur

Plaintiffs requested a res ipsa loquitur instruction, but the record reflects no objection when the trial court did not give it. When a party makes no objection to an alleged instruction problem at trial, the instruction must be clearly erroneous to merit reversal. See *Bright v. Cargill, Inc.*, 251 Kan. 387, 409, 837 P.2d 348 (1992).

The Franses requested the res ipsa loquitur instruction from PIK Civ. 3d 123.30:

"Where a party has the exclusive control of a thing or instrumentality which causes an injury and the injury is such that in the ordinary course of things it would not occur if the one having control uses proper care, then you are permitted to find negligence. If, however, you are not persuaded that the party was negligent, then you are not compelled to do so."

The comments to PIK Civ. 3d 123.30 point out that the res ipsa doctrine is seldom applicable in actions for damages by patients against physicians. Traditionally, a plaintiff must meet three requirements for application of the res ipsa doctrine: (1) The plaintiff must show that the "thing or instrumentality" causing the injury was within the exclusive control of the defendant; (2) the occurrence must be "of such kind or nature as ordinarily does not occur in the absence of someone's negligence"; and (3) the occurrence must not have been caused by the plaintiff's contributory negligence. *Martin v. Board of Johnson County Comm'rs*, 18 Kan. App. 2d 149, Syl. ¶ 6, 848 P.2d 1000 (1993). The last requirement that the plaintiff not be contributorily negligent must be modified today to incorporate the relevant comparative negligence principles. *Harmon v. Koch*, 24 Kan. App. 2d 149, 153, 942 P.2d 669 (1997).

We cannot say that the trial court's implicit conclusion that Heather's situation did not fit these criteria is clearly erroneous. In fact, it appears entirely appropriate. This was not a situation when some "thing or instrumentality" indisputably caused Heather's injury. The identity of the cause of the injury was hotly contested. The jury heard evidence on at least two possibilities: the questioned techniques and codeine. Only one of these causes would have been

within the control of defendant Gausman. One of them could have led to the conclusion that plaintiffs were negligent in some degree. The trial court's refusal to give the requested res ipsa loquitur instruction was not reversible error.

*Expert Testimony*

The Franses take issue with the trial court's decision to allow defense expert Dellinger to testify about the potential relationship between Heather's codeine ingestion and her respiratory arrest. They assert that his opinion in that regard went beyond the scope of his previously disclosed expert report.

As an initial matter, we note that Dellinger's report was not included in the record on appeal but was attached to the appellants' brief. It is the appellant's duty to designate a record sufficient to establish a claimed error; without an adequate record, the claim of error fails. *Pate v. Riverbend Mobile Home Village, Inc.*, 25 Kan. App. 2d 48, 52, 955 P.2d 1342 (1998). Material included in an appendix to an appellate brief is not a substitute for the record on appeal. *Cline v. Tittel*, 20 Kan. App. 2d 695, 702-03, 891 P.2d 1137, *rev. denied* 257 Kan. 1091 (1995). We elect to address the merits on this issue only because defendant appears to have no objection.

A trial court has broad discretion regarding the admissibility of expert testimony. *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 762, 915 P.2d 86 (1996). We must therefore decide whether that discretion was abused.

Both parties argue old law on this issue, relying on our decision in *Bates v. Hogg*, 22 Kan. App. 2d 702, 921 P.2d 249, *rev. denied* 260 Kan. 991 (1996), and its application of the discovery statutes in effect at that time to questioned expert testimony. Effective July 1, 1997, K.S.A. 60-226(b) and (e) and 60-237(c) were amended in ways pertinent to Dellinger's testimony in this case. The record reflects that discovery in this case closed on April 15, 1998, and trial was held September 21 to October 1, 1998.

K.S.A. 1999 Supp. 60-226(b) reads in pertinent part:

"(6) *Disclosure of expert testimony.*

"(A) A party shall disclose to other parties the identity of any person who may be used at trial to present expert testimony.

"(B) Except as otherwise stipulated or directed by the court, this disclosure . . . shall state the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

"(C) These disclosures shall be made at the times and in the sequence directed by the court. . . . The party shall supplement these disclosures when required under subsection (e)(1)."

## K.S.A. 1999 Supp. 60-226(e) provides:

"(1) A party is under a duty to supplement at appropriate intervals its disclosures under subsection (b)(6) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert under subsection (b)(6) the duty extends both to information contained in the disclosure and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed at least 30 days before trial, unless otherwise directed by the court."

## And, finally, K.S.A. 1999 Supp. 60-237(c) provides:

"(1) A party that without substantial justification fails to disclose information required by subsection (b)(6) or (e)(1) of K.S.A. 60-226 . . . shall not, unless such failure is harmless, be permitted to use as evidence at trial . . . any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions."

The trial court should have evaluated the admission of Dellinger's testimony regarding the possible link between Heather's codeine ingestion and her respiratory arrest under these provisions. We see no evidence in the record that it did so. That failure constitutes an abuse of discretion (albeit one the parties' apparent unfamiliarity with the current law encouraged).

When we examine the facts of this case, we arrive at the conclusion that the trial court's error was harmless. Our analysis follows this pattern: Dellinger's initial report was materially incomplete, and defendant failed to supplement it as required by K.S.A. 1999 Supp. 60-226(b)(6) and (e)(1). Ordinarily, in the absence of a substantial justification, K.S.A. 1999 Supp. 60-237(c)(1) would have dictated that Dellinger be prevented from testifying at trial regarding his undisclosed opinion. The trial court's erroneous ad-

mission of the testimony is excusable here because, regardless of Dellinger's opinion, the pathologist who conducted Heather's autopsy would have established the potentially lethal level of codeine in Heather's system.

The judgment below is affirmed.