No. 78,043

In the Matter of DOROTHY GERSHATER, *Respondent*.
(946 P.2d 993)

Opinion filed October 31, 1997.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Gregory W. Vleisides*, of Vleisides, Donnelly & O'Leary, L.C., of Kansas City, Missouri, argued the cause for respondent.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Dorothy Gershater, of Lawrence, an attorney admitted to the practice of law in the state of Kansas.

Complaints filed against the respondent alleged that the respondent violated MRPC 1.3 (1996 Kan. Ct. R. Annot. 264) (diligence), 1.4 (1996 Kan. Ct. R. Annot. 270) (communication), 1.16 (1996 Kan. Ct. R. Annot. 310) (declining or terminating representation), and Supreme Court Rule 218 (1996 Kan. Ct. R. Annot. 226) (disbarred or suspended attorneys).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys, and the facts were summarized by the hearing panel as follows:

## FINDINGS OF FACT

"2. In 1994 Ms. Gershater's law practice was composed primarily of domestic, probate, and criminal work. She was truly a solo practitioner, working without even any support staff. At an earlier stage in her career, she had spent two years in a practice with other attorneys. Her professional memberships include the American, Kansas and Douglas County Bar Associations.

"3. In October 1994 Ms. Mills contacted Respondent to inquire about a domestic matter pending in Jefferson County. Ms. Mills had been represented in succession by two other attorneys, but retained Respondent to represent her at the final divorce and custody hearing set for December 1, 1994. At the end of the hearing the judge ruled from the bench, granting custody of the minor child to Ms. Mills' husband and ordering her to pay child support in accordance with the guidelines, based upon an imputed minimum wage. The transcript of the judge's bench re-

marks, furnished after this hearing because of a transcription delay, was accepted into evidence by agreement of the parties. The transcript reveals that Ms. Mills' husband's counsel was ordered to draw the journal entry, and that the parties were to work out the visitation details and child support calculation between themselves. The judge specifically stated the divorce would not be final until the journal entry was filed. Thus there should have been no doubt as to Ms. Gershater's continuing obligation to Ms. Mills. The case was not concluded.

"4. Ms. Mills testified that she understood from Ms. Gershater that her child support obligation would amount to approximately $140.00 per month, applying the guidelines to a presumed minimum wage job. Ms. Mills was angry and unhappy with the ruling.

"5. Ms. Mills and the Respondent spoke by telephone a few days after the hearing. Ms. Gershater explained that Ms. Mills' options included a motion to reconsider or an appeal, but she did not recommend either such alternative and she would not pursue either on Ms. Mills' behalf. Ms. Gershater suggested that Ms. Mills get some counseling and find a job, with a goal of developing some stability in her life. Respondent testified that she did not consider herself to be representing Ms. Mills following that conversation.

"6. On December 9, 1994, Ms. Gershater received notice from the Kansas Supreme Court that she had been suspended from the practice of law for one year as a result of Case No. B5444. Respondent was specifically ordered to comply with S.C. Rule 218, which requires notice of suspension or disbarment to all clients in pending litigation, as well as notice to the court and opposing counsel. A motion to withdraw is also required. Ms. Gershater filed no motion to withdraw in Ms. Mills' divorce action, nor did she provide any written notice of suspension to Ms. Mills, the judge, or opposing counsel.

"7. On February 25, 1995, Ms. Mills received from her husband's counsel a copy of the journal entry in the divorce case, which required her to pay $302.00 per month in child support. Ms. Mills states she attempted unsuccessfully to contact Respondent and ultimately learned from the local Legal Aid office that Respondent had been suspended. Ms. Mills did and does believe that the journal entry incorrectly stated the amount of child support due. She was unable to obtain other counsel to challenge the ruling, however, and there is insufficient evidence before the panel to arrive at a finding one way or the other.

"8. Ms. Mills contends that she paid Respondent $1,000.00 in cash, plus $581.42 that was paid on her behalf by the man who is now her husband. She seeks a return of the sums paid to Ms. Gershater as restitution, as well as $162.00 per month, the difference between the child support recited in the journal entry and that which she contends Ms. Gershater led her to believe she would owe. Ms. Mills has no receipt or other verification of the alleged payment of $1,000.00 in cash. Ms. Gershater testified that Ms. Mills' friend paid her $581.42 for her work

in connection with the divorce, and no other payment was made. The panel credits Ms. Gershater's testimony.

"9. Ms. Gershater received the draft journal entry from Ms. Mills' ex-husband's counsel in January 1995. She reviewed it and compared it with her notes from the hearing to see if it comported with them. She found no disagreement. She further testified that if she had disagreed with the draft, she would have objected in some way. Even at that time, however, she did not advise the court in Jefferson County, opposing counsel, or Ms. Mills of her suspension.

"10. Ms. Gershater believed Ms. Mills' divorce was no longer a 'pending matter' on December 9, 1994, when Ms. Gershater's obligations under Supreme Court Rule 218 were triggered. Ms. Gershater's basis for her definition of 'pending' stems from her belief that the judge's orders were final and effective when announced from the bench, as well as her telephone conversation with Ms. Mills in which Ms. Gershater disavowed an intent to pursue post-trial remedies on Ms. Mills' behalf.

"11. Ms. Gershater recognized, however, that she had obligations to Ms. Mills in regard to the journal entry. At the hearing, Ms. Gershater testified as follows:

'[I]f I had not been suspended I would have signed the journal entry and returned it to Mr. Hayes [husband's lawyer] and that would have basically completed my work on that case.'

(Gershater hearing, p. 33.)

"12. Since Ms. Gershater was under a suspension order, she could not have signed the journal entry. Nothing prevented her, however, from writing to her client, opposing counsel, and the judge to explain her silence and to suggest Ms. Mills consult other counsel about any questions regarding the journal entry.

"13. We do not find Ms. Gershater's oversight in notifying Ms. Mills of the suspension to be dishonest. In December 1994 she notified many people whom she was not required by Rule 218 to notify, including court personnel, expert witnesses, and others with whom she was not currently working. This conduct signals a desire to assure compliance with the Court's suspension order, not an intent to conceal details from those with an interest, however remote.

### "CONCLUSIONS OF LAW

"The panel unanimously enters the following conclusions of law:

"14. Ms. Gershater's conduct violated [MRPC] 1.3, 1.4, and 1.16, as well as Supreme Court Rule 218.

"15. Counsel for respondent argued that Rule 218 is vague in its use of the term 'pending litigation.' Counsel contended that the divorce litigation was no longer pending because the divorce was final from the time of the judge's ruling from

the bench. We do not find the Rule to be vague and we disagree that the bench ruling terminated either the matter or Ms. Gershater's representation.

"16. The Disciplinary Administrator seeks Ms. Gershater's disbarment. In support of that outcome, the panel was referred to the American Bar Association Standards for Imposing Sanctions, Section 8.0 at p. 47. The cited section suggests disbarment

'(a) when a lawyer knowingly or intentionally violates the terms of a prior discipline order, causing injury or potential injury to a client, the public, or the profession, or (b) when a lawyer has previously been suspended for the same or similar misconduct and knowingly or intentionally engages in further acts causing injury to a client, the public, or the profession.'

"17. No cases have been brought to the panel's attention that deal with a violation of Supreme Court Rule 218, and our own research discloses none. The Disciplinary Administrator describes Ms. Gershater's conduct as client abandonment and refers the panel to *In [re] Zieber*, 248 Kan. 502, 808 P.2d 433 (1991), and *In [re] Dill*, 253 Kan. 195, 853 P.2d 696 (1993). Those cases involved attorneys who relocated from Kansas to other states without advising their clients or making any disposition of the matters entrusted to them, thus abandoning all their clients and their practices. The matter before the panel does not involve such egregious acts. Further, while Ms. Gershater's prior suspension was imposed in part for client abandonment, factors such as blaming the judge for consequences of her own misconduct played a substantial role in the severity of the discipline meted out to her. The impact of ABA Standard 8.0(b) is thus blunted. We do not believe that Rule 218(c) requires automatic disbarment but rather the application of informed discretion and common sense.

"18. In making its recommendations for discipline, the panel has reviewed the ABA Standards for Imposing Lawyer Sanctions. The factors to be considered include the following: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors.

"19. The panel applied the ABA Standards on Aggravation and Mitigation, as follows:

### "Aggravating Factors

"A. Prior disciplinary offenses. Respondent was informally admonished in November 1989 and was suspended from law practice for one year in December 1994.

"B. Dishonest or selfish motive. The evidence did not show the Respondent to be dishonest or selfish.

"C. Pattern of misconduct. Respondent failed to appear for a hearing in a landlord/ tenant dispute in Douglas County, resulting in the suspension meted out in Su-

preme Court Case No. 72,196. While both that case and this might he characterized as having elements of client abandonment, the differences in degree are considerable, as discussed above.

"D. Multiple offenses. While several rules are involved (and broken), a single act is the source of the problem.

"E. Bad faith obstruction of the disciplinary process by intentionally failing to comply with the rules or orders of the disciplinary agency. This is not a factor.

"F. Submission of false evidence, false statements, or other deceptive practices during disciplinary process. This is not a factor.

"G. Refusal to acknowledge wrongful nature of conduct. Respondent refused to admit to the violations alleged in the complaint and refused to acknowledge any wrongdoing or lack of good judgment. The panel was troubled by Respondent's rather cavalier approach to the proceedings; she was late and upon arrival announced that she had to leave in an hour to catch a plane, arrangements which she did abandon to stay with the proceedings until conclusion. It appears that Respondent still does not recognize the continuing duty to a client to conclude the case.

"H. Vulnerability of the victim. While Ms. Mills cannot be said to be sophisticated in legal matters, nor can she be described as inexperienced in them. We do not find her to be any more or less vulnerable than other domestic clients.

"I. Substantial experience in the practice of law. Respondent began law practice in 1984.

"J. Indifference to making restitution. This is not a factor.

"K. Illegal conduct, including the use of controlled substances. This is not a factor.

### "MITIGATING FACTORS

"A. Absence of a prior disciplinary record. Respondent has a prior record of discipline, as outlined above.

"B. Absence of a dishonest of selfish motive. No such motive was present.

"C. Personal or emotional problems if such misfortunes have contributed to violation of the code of professional responsibility. There are no such factors in this case.

"D. Timely and good faith effort to make restitution or to rectify consequences of misconduct. Respondent has admitted no wrongdoing and offered no restitution.

"E. The present and past attitude of the attorney as shown by her cooperation during the hearing and her full and free acknowledgement of the transgression. Respondent has cooperated, but has admitted no wrongdoing.

"F. Inexperience in the practice of law. This is not a factor.

"G. Previous good character and reputation. A number of letters from clients and other lawyers were submitted in Respondent's behalf.

"H. Physical disability. This is not a factor in this case.

"I. Mental disability or chemical dependency including alcoholism or drug abuse when (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependence or mental disability cause the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. This is not a factor in this case.

"J. Delay in disciplinary proceedings. This is not a factor.

"K. Imposition of other penalties or sanctions. This is not a factor.

"L. Remorse. Respondent has shown no remorse about her actions.

"M. Remoteness of prior offenses. This is not a factor.

"N. Any statement by the complainant expressing satisfaction with restitution and requesting no discipline. This is not a factor.

## "RECOMMENDATIONS

"The Disciplinary Administrator seeks Respondent's disbarment. After reviewing all the pertinent evidence and the ABA Standards, as well as other authority, however, the panel recommends that Ms. Gershater be suspended for a period of six (6) months and completion of fifteen (15) hours of continuing legal education in domestic relations and ethics, reinstatement to be conditioned upon full compliance with all orders of the Court, including Rule 218.

"The panel does not find restitution to be appropriate in this case. Ms. Gershater was paid $581.42 to prepare for and appear at a final divorce hearing. Nothing in this case indicates to the panel that Ms. Gershater overreached in charging this fee. Nor does the panel find any validity in a claim that Respondent should pay complainant for the difference between the child support assessed against her and the amount she allegedly expected to have to pay.

"Costs are assessed against Respondent in an amount to be certified by the Disciplinary Administrator."

The court, having considered the record, the report of the hearing panel, and arguments of counsel, concludes that the findings of fact are supported by clear and convincing evidence. The respondent takes no exception to the findings of fact. We also conclude that the conclusions of law are supported by the findings and adopt the findings and conclusions of the panel. We, like the panel, believe that disbarment is not an appropriate sanction. A majority

of this court is also convinced that a 6-month suspension recommended by the panel is not the appropriate sanction.

We agree with the panel that violation of Supreme Court Rule 218 does not call for automatic disbarment. This is especially true when there is evidence to demonstrate that the respondent's intent was to comply with Rule 218. We also agree with the panel that the violations established in this case stem from a single set of circumstances involving the respondent's actions after providing representation to her client in a contested divorce action.

The respondent advised her client that she would not represent her in an appeal of the district court decision. The evidence establishes that the respondent acted upon a belief that because she was suspended she could not sign the journal entry in question and a further erroneous belief that she had no further duty to her client in regard to that journal entry.

However, the respondent now admits that the attorney-client relationship continued and that she violated her duty to keep her client informed and her duty to advise her client of the need to secure other representation. At the time she received the proposed journal entry from opposing counsel, she had been suspended from the practice of law in this state by this court. Therefore, she had the duty to advise her client of this fact as well as advise her client of the need to secure other representation with regard to the journal entry.

The journal entry was entered by the court pursuant to Rule 170 (1996 Kan. Ct. R. Annot 178) without the client's knowledge. According to the respondent, the journal entry reflected the oral decision of the trial court at the conclusion of the hearing. There is no evidence to support a conclusion that the respondent's violations were intentional or that her violations legally prejudiced her client. In these circumstances, a majority of this court concludes that an appropriate sanction is published censure.

IT IS THEREFORE ORDERED that Dorothy Gershater be censured in accordance with Supreme Court Rule 203(a)(3) (1996 Kan. Ct. R. Annot. 193) for her violation of the Model Rules of Professional Conduct.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that costs herein be assessed to the respondent.