No. 84,994

In the Matter of Dorothy Gershater, *Respondent*.

(17 P.3d 929)

Opinion filed January 26, 2001.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause, and *Edwin A. Van Petten*, deputy disciplinary administrator, was on the brief for petitioner.

*William K. Rork*, of Rork Law Office, of Topeka, argued the cause, and *Michael Gayoso*, of the same firm, was with him on the brief for respondent.

*Dorothy Gershater*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline against the respondent, Dorothy Gershater, an attorney admitted to the practice of law in Kansas, whose last known business address is Lawrence, Kansas. The hearing panel concluded that the respondent violated Kansas Rules of Professional Conduct (KRPC) 3.3(a)(1) (2000 Kan. Ct. R. Annot. 385) (making a false statement of material fact or law to a tribunal); KRPC 8.4(d) (2000 Kan. Ct. R. Annot. 420) (engaging in conduct that is prejudicial to the administration of justice); and KRPC 8.4(g) (2000 Kan. Ct. R. Annot. 420) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law); as well as Supreme Court Rule 207(b) (2000 Kan. Ct. R. Annot. 237-38) (failing to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information she may have affecting such matters); and Rule 211(b) (2000 Kan. Ct. R. Annot. 250) (failing to serve an answer upon the Disciplinary Administrator within 20 days after the service of the complaint). The panel recommended that Gershater be indefinitely suspended from the practice of law.

On December 9, 1994, this court suspended Gershater for a period of 1 year. *In re Gershater*, 256 Kan. 512, 886 P.2d 343 (1994). Before Gershater was eligible to be reinstated, she was

required (1) to pay the costs of the disciplinary proceeding, (2) to provide an affidavit that she complied with Supreme Court Rule 218 (2000 Kan. Ct. R. Annot. 266), was current with the Continuing Legal Education (CLE) requirements, and was requesting an order for reinstatement, (3) to pay the state registration fee and late penalty, (4) to pay the annual CLE fee and late penalty, and (5) to pay the reinstatement from suspension fee and apply for reinstatement with the CLE Commission. Gershater did not comply with the reinstatement conditions until early April 1996. As a result, Gershater's license to practice law was not reinstated until April 15, 1996.

Prior to Gershater being reinstated in April 1996, she entered into an oral agreement to lease office space on November 15, 1995. The landlord terminated the oral agreement and Gershater employed counsel to bring an action for specific performance. The petition for specific performance contained the following language: "Plaintiff (Respondent) is an attorney duly licensed to practice law in the State of Kansas," and in her prayer for relief requested "damages for interruption of her profession."

At the time the petition was drafted, Gershater and her counsel were aware that Gershater's license to practice law in the state of Kansas was suspended. After drafting and signing the petition, her counsel instructed Gershater to file the petition in the District Court of Douglas County, Kansas, *after* Gershater received final information that her license to practice had been reinstated.

Gershater did not wait to file the petition until her license to practice law had been reinstated. At the time Gershater filed the petition, she knew her license to practice law had not been reinstated.

The landlord attempted to obtain discovery from Gershater. Gershater failed to comply with discovery requests. The landlord sought and obtained an order compelling discovery, and the district court ordered Gershater to pay the attorney fees associated with filing and prosecuting the motion to compel discovery. Gershater did not comply with the order to pay attorney fees and as a result the attorney fees were paid by Gershater's counsel.

Thereafter, summary judgment was granted to the landlord and subsequently sanctions were granted to the landlord. The district court concluded:

"More egregious than the failure of [counsel] to investigate the underlying facts of Gershater's claim is Gershater's failure to honestly relate the facts to her attorney. Gershater knew at the time the Petition was filed she was not an attorney duly licensed to practice law in Kansas. She knew the failure to rent office space to her did not interrupt her profession. Gershater knew that the allegations were not well-grounded in fact."

In 1997, Gershater filed a lawsuit against her counsel's law firm alleging malpractice in handling her claim against the landlord. The case was captioned *Dorothy Gershater vs. Catherine A. Donnelly and Vleisides, Donnelly and O'Leary,* No. 97 C 367. Eventually, on May 27, 1998, in exchange for their agreement not to bring a lawsuit against Gershater, Gershater dismissed her case with prejudice against counsel and the law firm, and a full settlement and mutual release agreement was signed by all parties.

On May 29, 1998, Gershater mailed a letter to Vleisides. Her letter was vicious, offensive, and extremely unprofessional. Her letter employed a number of vile and unprintable epithets referring to both Vleisides and Donnelly.

The hearing panel made the following conclusions of law:

"1. In this case, the Respondent violated Kansas Rule of Professional Conduct (hereinafter 'KRPC') 3.3(a)(1). This rule provides that '[a] lawyer shall not knowingly make a false statement of material fact to a tribunal.' [Citation omitted.] The Respondent knew that she was not 'an attorney duly licensed to practice law in the State of Kansas' when she filed the Petition for Specific Performance against Mr. Anderson in the District Court of Douglas County, Kansas. [Citation omitted.] When the Respondent filed the petition that contained that statement, she knowingly made a false statement of a material fact to the District Court. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

"2. KRPC 8.4(d) defines professional misconduct as, 'engag[ing] in conduct that is prejudicial to the administration of justice.' [Citation omitted.] The Hearing Panel concludes that the Respondent engaged in misconduct in violation of KRPC 8.4(d) by providing false information to the District Court and by failing to cooperate with the discovery requests.

"3. A lawyer's most basic professional obligation is to maintain personal honesty and integrity. Without those attributes, a lawyer is not fit to practice law. See KRPC 8.4(g). Because the Respondent provided false information to the District

Court, because the Respondent wrote the May 29, 199[8], letter to Mr. Vleisides, and because the Respondent insisted that the May 29, 199[8], letter to Mr. Vleisides was appropriate and truthful, the Hearing Panel concludes that the Respondent engaged in conduct that adversely reflects on her fitness to practice law, in violation of KRPC 8.4(g).

"4. Kan. Sup. Ct. R. 207(b) provides as follows:

(b) It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters. [Citation omitted.]

## Kan. Sup. Ct. R. 211(b) provides in pertinent part:

The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel. [Citation omitted.]

"In this case, the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b) by failing to file a written answer and by failing to appear at the hearing held on the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b) and Kan. Sup. Ct. R. 211(b)."

## The hearing panel thereafter made the following recommendation:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* In this case, the Respondent violated a duty owed to the legal profession to maintain personal integrity and honesty.

"*Mental State*. The Respondent intentionally engaged in the misconduct.

"*Injury*. The legal profession suffered actual injury by the Respondent's false statements to the District Court of Douglas County, Kansas, and by the Respondent's May 29, 199[8], letter to Mr. Vleisides.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* The Respondent has previously been disciplined on three (3) separate occasions. First, on November 13, 1989, the Disciplinary

Administrator informally admonished the Respondent for having violated MRPC 1.4 and 1.5. [Citation omitted.]

"Then, on December 9, 1994, the Kansas Supreme Court suspended the Respondent from the practice of law for one (1) year for violating MRPC 1.1, 1.3, 1.4, 3.3, 3.4, 3.5(d), 4.1, 8.2, 8.4(c) and 8.4(d). See *In re Gershater*, 256 Kan. 512, 886 P.2d 343 (1994). Thereafter, on April 15, 1996, the Respondent's privilege to practice law in the state of Kansas was reinstated. [Citation omitted.]

"Finally, on October 31, 1997, the Respondent was publicly censured for having violated MRPC 1.3, 1.4, and 1.16. See *In re Gershater*, 263 Kan. 199, 946 P.2d 993 (1997). [Citation omitted.]

*"Dishonest or Selfish Motive.* In this case, the Respondent's misconduct included providing false information to the District Court of Douglas County, Kansas. The Respondent provided false information to the court when, on January 10, 1996, she filed the Petition for Specific Performance. [Citation omitted.] That pleading contained the following language: 'Plaintiff is an attorney duly licensed to practice law in the State of Kansas.' Additionally, the Respondent sought to recover 'damages for interruption of her profession.' Because the Respondent's license to practice law in the state of Kansas was suspended at the time she filed the pleading and because the Respondent knew that her license to practice was suspended, the Respondent acted dishonestly and with a selfish motive.

*"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent failed to file a written answer to the Formal Complaint as required by Kan. Sup. Ct. R. 211 and the Respondent failed to appear at the hearing held on the Formal Complaint. The Respondent has not contacted the Disciplinary Administrator's office during the pendency of this action. Accordingly, the Respondent obstructed the disciplinary proceeding by intentionally failing to comply with rules of the disciplinary process.

*"Refusal to Acknowledge the Wrongful Nature of Conduct.* In her initial response to the letter of complaint, and when questioned by the investigator, the Respondent was not remorseful and denied any wrongdoing.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In making its recommendations for discipline, the Hearing Panel, in this case, found no mitigating circumstances.

"In addition to the above-cited factors, in making its recommendation, the Hearing Panel has thoroughly examined and considered Standard 6.12. That standard provides, in pertinent part:

Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. [Citation omitted.]

"The Respondent knowingly provided false information to the court, took no remedial action, and caused injury to Mr. Anderson. At the time the Respondent filed the Petition for Specific Performance, the Respondent knew that in order for her claim for relief to be successful, the Respondent had to allege that she had somehow been damaged. However, at the time the Respondent filed the lawsuit, she had not been reinstated to practice law and had not been damaged. Thus, by including the false statement that she was duly licensed to practice law and that she had suffered an interruption in her profession, the Respondent caused injury to Mr. Anderson, or, at the very least, caused an adverse effect on the legal proceeding.

"The Respondent's behavior in the case filed against Mr. Anderson took place even before she had been reinstated to practice law following a suspension. One would think that an attorney in such a position would be more aware of their behavior and their ensuing actions. Then the Respondent followed with the letter to Mr. Vleisides which was the subject of this complaint. It appears to this panel that the Respondent has little respect for the legal profession and, more specifically, for the disciplinary process."

The hearing panel recommended that Gershater be indefinitely suspended from the practice of law.

This court is not bound by the recommendation of the disciplinary hearing panel. Supreme Court Rule 212(f) (2000 Kan. Ct. R. Annot. 255); *In re Jones*, 252 Kan. 236, 239, 843 P.2d 709 (1992). This court has a duty in disciplinary proceedings to examine all the evidence and to determine for itself the judgment to be entered. *In re Roth*, 269 Kan. 399, 402, 7 P.3d 241 (2000); *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971). In *State v. Zeigler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated:

"Although such a report is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony."

The ultimate goal of disciplinary proceedings is to protect the public. See *Jones*, 252 Kan. at 239. Additionally, the disciplinary proceedings give the public confidence that attorneys who violate the KRPC are disciplined in a manner which is appropriate, given the specific circumstances of the case. *In re Bailey*, 268 Kan. 63, 65, 986 P.2d 1077(1999).

## I. CONDUCT WHILE SUSPENDED

Gershater argues that this court cannot regulate conduct which occurred when her license was suspended because she was not a "lawyer" within the meaning of KRPC 3.3(a)(1) (2000 Kan. Ct. R. Annot. 385) (a "lawyer" shall not knowingly make a false statement of material fact or law to a tribunal).

This argument is without merit. Attorneys who have been suspended remain members of the Kansas Bar and are subject to the provisions of the KRPC for acts committed during the period of suspension. *In re Wilkinson*, 251 Kan. 546, 553, 834 P.2d 1356 (1992); *Phelps v. Shanahan*, 210 Kan. 605, 608, 502 P.2d 768 (1972). See also *In re C de Baca*, 11 P.3d 426, 430 (Colo. 2000) (a lawyer is subject to discipline for misconduct committed while the attorney is suspended from the practice of law because they are still members of the bar); *The Florida Bar v. Ross*, 732 So. 2d 1037, 1040-41 (Fla. 1998) (attorney can be disciplined for acts of misconduct when the acts occur while the attorney is suspended from the practice of law even though suspended attorney not considered member of the bar); *In re Chavez*, 129 N.M. 35, 40, 1 P.3d 417 (2000) (rules of professional conduct apply to an attorney who has been suspended even though acts occur during the period of suspension); *In re Conduct of G. Hereford*, 306 Or. 69, 74, 756 P.2d 30 (1988) (suspended attorney has an obligation to cooperate with the bar in the investigation of unethical conduct even when acts occur during the period of the attorney's suspension from the practice of law); *Kirvin v. Secretary of the Board of Commissioners on Grievances and Discipline*, 271 S.C. 194, 196-97, 246 S.E.2d 857 (1978) (attorneys remain members of the bar while under suspension and, thus, can be disciplined for misconduct which occurs both prior to and during the period of suspension).

In the alternative, Gershater argues that she had a good faith basis to believe that she was licensed to practice law in the state of Kansas when she filed the complaint. This contention is unsupported by the facts. When the complaint was filed on January 11, 1996, Gershater had not complied with the requirements of reinstatement that were mailed to her by the Disciplinary Administra-

tor's office. Gershater knew that she had been suspended when she filed the complaint and knew that she had not yet been reinstated by this court. This argument is also without merit.

## II. CORRESPONDENCE TO FORMER COUNSEL

Gershater next argues that the letter she sent to Vleisides on May 29, 1998, was privileged and reviewed by the hearing panel in violation of K.S.A. 60-426. K.S.A. 60-426 governs communication between a lawyer and a client and states in pertinent part:

"(a) *General rule.* Subject to K.S.A. 60-437, and except as otherwise provided by subsection (b) of this section communications found by the judge to have been between lawyer and his or her client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (1) if he or she is the witness to refuse to disclose any such communication, and (2) to prevent his or her lawyer from disclosing it, and (3) to prevent any other witnesses from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated by the client, or (iii) as a result of a breach of the lawyer-client relationship. The privilege may be claimed by the client in person or by his or her lawyer, or if an incapacitated person, by either his or her guardian or conservator, or if deceased, by his or her personal representative.

"(b) *Exceptions.* Such privileges shall not extend (1) to a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the communication or planning of a crime or a tort, or (2) to a communication relevant to an issue between parties all of whom claim through the client, regardless of whether the respective claims are by testate or intestate succession or by *inter vivos* transaction, or (3) to a communication relevant to an issue of breach of duty by the lawyer to his or her client, or by the client to his or her lawyer, or (4) to a communication relevant to an issue concerning an attested document of which the lawyer is an attesting witness, or (5) to a communication relevant to a matter of common interest between two or more clients if made by any of them to a lawyer whom they have retained in common when offered in an action between any of such clients."

Gershater asserts that the correspondence between her and her former counsel was privileged attorney-client correspondence and, therefore, should not have been considered by the hearing panel. Gershater, however, did not object to the introduction of the correspondence at the disciplinary hearing; therefore, she has waived her right to object to its use and has waived any attorney-client

privilege that may have existed. See *In re Roth*, 269 Kan. 399, 408, 7 P.3d 241 (2000) (mediation-related privilege was waived where it was not asserted at attorney discipline hearing). See also *Calvert v. State Bar of California*, 54 Cal.3d 765, 780, 819 P.2d 424 (1991) (holding that attorney-client privilege waived where attorney did not object to testimony at the attorney disciplinary hearing).

Moreover, it is clear that the correspondence to Gershater's former counsel was not the sole basis for any of the violations found by the hearing panel. The hearing panel found that Gershater had violated KRPC 3.3(a)(1) (2000 Kan. Ct. R. Annot. 385) (making a false statement of material fact or law to a tribunal); KRPC 8.4(d) (2000 Kan. Ct. R. Annot. 420) (engaging in conduct that is prejudicial to the administration of justice); and KRPC 8.4(g) (2000 Kan. Ct. R. Annot. 420) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law). The violation of KRPC 3.3(a)(1) was solely based on the complaint filed by Gershater wherein she stated that she was an attorney duly licensed to practice law in the state of Kansas. The violation of KRPC 8.4(d) was solely based on the complaint and on Gershater's failure to comply with discovery requests. The violations of Supreme Court Rules 207(b) and 211(b) were based on the failure of Gershater to cooperate with the Disciplinary Administrator's office by failing to file a written answer and failing to appear at the disciplinary hearing.

The violation found by the hearing panel of KRPC 8.4(g) was based in part on the content of the correspondence to Vleisides, but was also based on providing false information to the district court and on Gershater's insistence that the letter was truthful when she discussed the content of the letter with disciplinary investigator Scott Bloch.

Suffice it to say that the correspondence to Vleisides is conduct that adversely reflects on Gershater's fitness to practice law. A lawyer should be able to write a letter to an opposing party or a party with an adverse interest and intelligently communicate his or her position without the use of profane, offensive, or derogatory language. "[A]ttorneys are required to act with common courtesy and civility at all times in their dealings with those concerned with the

legal process." *In re Vincenti*, 114 N.J. 275, 282, 554 A.2d 470 (1989). "Vilification, intimidation, abuse and threats have no place in the legal arsenal." *In re Mezzacca*, 67 N.J. 387, 389-90, 340 A.2d 658 (1975). "An attorney who exhibits the lack of civility, good manners and common courtesy . . . tarnishes the entire image of what the bar stands for." *In re McAlevy*, 69 N.J. 349, 352, 354 A.2d 289 (1976).

We agree with the Ohio Supreme Court in *Columbus Bar Assn. v. Riebel*, 69 Ohio St. 2d 290, 292, 432 N.E.2d 165 (1982), when it discussed civility and the duty of attorneys to treat others with respect. It stated:

"It is within the real meaning and intent of our Code of Professional Responsibility that lawyers should always be cognizant of the necessity for good manners, courtesy and discourse, both to client and other practitioners, as being part of our professional ethics.

"The zeal employed by an attorney in guarding the interests of his clients [and in communicating with adverse parties] must always be tempered so as not to inject his personal feelings or display a demeanor that subjects parties to a proceeding or opposing counsel to certain indignities."

Gershater's correspondence to Vleisides, although of minor importance in our consideration of the violations committed by Gershater and the discipline to be imposed upon her, is without doubt, lacking in courtesy and civility. The abusive and threatening nature of the language has no place in the legal world.

## III. FIRST AMENDMENT

Gershater next argues that she has a First Amendment right to express her opinion to her former counsel regarding the handling of her civil case; that she also has a First Amendment right to express her opinion about the Disciplinary Administrator's office and this court; and that the hearing panel violated that right when it recommended discipline based on the content of the letters.

The First Amendment to the United States Constitution states that Congress shall make no law abridging the freedom of speech. Section 11 of the Kansas Constitution Bill of Rights states each person may freely speak, write, or publish their sentiment on all subjects, "being responsible for the abuse of such rights." Both the

United States Supreme Court and this court have recognized that freedom of speech and press is not without certain limitations. *In re Johnson*, 240 Kan. 334, 336, 729 P.2d 1175 (1986).

Whether the First Amendment rights of Gershater have been impinged upon, however, is irrelevant in this matter as none of the violations found by the hearing panel, other than KRPC 8.4(g), referenced the correspondence sent from Gershater to Vleisides. The KRPC 8.4(g) violation does not hinge on the correspondence because none of the letters serves as the sole basis for the finding of any KRPC violation. Gershater may not claim that her First Amendment rights have been violated.

Furthermore, a lawyer's speech may be limited more than that of a lay person. "Upon admission to the bar, a lawyer accepts and agrees to be bound by the rules of conduct significantly more demanding than the requirements of law applicable to other members of society." *Attorney Grievance Commission v. Alison*, 317 Md. 523, 535, 565 A.2d 660 (1989). In *Johnson*, this court extensively discussed the duties a lawyer has to the public and profession once he or she is admitted to the bar. This court stated:

"One who has received a licence and is accorded the privilege to practice law is still guaranteed the right of freedom of speech. In those instances where a lawyer's unbridled speech amounts to misconduct which threatens a significant state interest, a state may restrict the lawyer's exercise of personal rights guaranteed by the Constitutions. *N.A.A.C.P. v. Button*, 371 U.S. 415, 438, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963).

"Other jurisdictions have recognized that, unlike a layman, a bar member's right to free speech may be regulated. . . .

"Upon admission to the bar of this state, attorneys assume certain duties as officers of the court. Among the duties imposed upon attorneys is the duty to maintain the respect due to the courts of justice and to judicial officers [and to opposing counsel]. A lawyer is bound by the [KRPC] in every capacity in which the lawyer acts, whether he is acting as an attorney or not, and is subject to discipline even when involved in nonlegal matters. . . ." 240 Kan. at 336-37.

To paraphrase the court in *Johnson*, a lawyer, as a citizen, has the right to criticize opposing counsel or former counsel. To exercise this right, the lawyer must be certain of the merits of the complaint, use appropriate language, and avoid petty criticisms. Unrestrained and intemperate statements against opposing counsel

or other attorneys lessens public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.

Gershater's First Amendment rights have not been violated.

## IV. PROCEDURAL DUE PROCESS

Gershater next argues that she was denied procedural due process when the hearing panel found that she had violated Supreme Court Rules 207(b) and 211(b). Gershater asserts that her due process rights were denied because she did not have the opportunity to defend against a violation of either of the rules.

The formal complaint, along with the notice of the formal hearing, were served on Gershater on November 3, 1999. Gershater signed the registered receipt of the mailing.

Supreme Court Rule 207(b) states:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters."

Supreme Court Rule 211(b) states:

"Formal disciplinary proceedings shall be instituted by the Disciplinary Administrator by filing a formal complaint with the secretary of the Board. The complaint shall be sufficiently clear and specific to inform the respondent of the alleged misconduct. A copy of the complaint shall be served upon the respondent. The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel."

Gershater argues that she did not have the opportunity or ability to respond against the alleged violation of either 207(b) or 211(b) and that the hearing panel found these violations independent of the Disciplinary Administrator's complaint. A simple reading of the complaint filed against Gershater and served upon her reveals that she was given general notice that she had violated 207(b).

Furthermore, one of the main reasons for the finding of the 207(b) violation was Gershater's failure to appear at the disciplinary hearing. It goes without saying that if an attorney does not appear for his or her disciplinary hearing, the panel will find a 207(b)

violation. It would be inefficient and nonsensical to require the Disciplinary Administrator to postpone the disciplinary hearing and reschedule so that an amended complaint could be served which sets forth that the respondent did not appear at the disciplinary hearing. As an attorney admitted to the bar in Kansas, Gershater is presumed to know the rules governing attorneys.

The finding of the 211(b) violation was based upon Gershater's failure to file an answer to the complaint filed by the Disciplinary Administrator's office. Gershater's argument on this point is also without merit as the complaint specifically notifies her that she has a duty under 211(b) to file an answer within 20 days.

Gershater was not denied her due process rights as she was fully apprised of the charges against her and had ample opportunity to present an answer and defense. Gershater had the opportunity and, indeed, a duty to file an answer. She did not. Gershater had the opportunity and duty to attend the disciplinary hearing. She did not. Gershater chose not to respond to the complaint and chose not to attend the hearing. The hearing panel's findings regarding 207(b) and 211(b) are sound and have not infringed upon Gershater's procedural due process rights.

## V. SUFFICIENCY OF THE EVIDENCE

Gershater argues that the testimony before the hearing panel was contradictory, vague, and insufficient to support the findings of fact by the hearing panel. Specifically, Gershater points to the testimony of Vleisides and of Donnelly regarding their legal representation of her during the Anderson litigation. Vleisides testified that he never filed an amended petition; Donnelly testified that an amended petition was filed.

Although the testimony on this minor and insignificant point is contradictory, none of the testimony in question affects whether Gershater violated KRPC 3.3(a)(1), 8.4(d), 8.4(g), or Supreme Court Rules 207(b) and 211(b). The evidence supporting the findings of the hearing panel on these issues is uncontroverted, clear, and convincing. Gershater's argument on this issue is without merit.

## VI. EXHIBITS NOT IN THE RECORD

Gershater's brief before this court contains two exhibits. Exhibit A contains four letters of support from judges in Douglas County, Kansas, and one letter of support from a business associate . All of the letters are positive and describe Gershater as being "always prepared"; a "zealous advocate for her clients"; "prompt and diligent"; and that she "conducts herself in a good professional manner," among other compliments. Exhibit B is Gershater's MCLE annual report which shows that she attended 45.5 CLE hours from July 1999 to June 2000, including 5.0 professional responsibility hours. Exhibits A and B, although appended to the brief, are not part of the record.

Gershater argues that this court should consider exhibits A and B as factors in mitigation when considering the discipline to be imposed. The crux of Gershater's argument is that most of the violations occurred over 4 years ago, and the letters and CLE summary indicate that she has genuinely improved her quality of work and professional demeanor since that time. Gershater did not present either exhibit A or B at her disciplinary hearing, which she failed to attend.

It is the respondent's duty to designate the record sufficient to establish a claimed error. *Pate v. Riverbend Mobile Home Village, Inc.*, 25 Kan. App. 2d 48, 52, 955 P.2d 1342 (1998). Material which is annexed to an appellate brief by way of an appendix is not a substitute for the record itself and cannot be considered on appeal. Supreme Court Rule 6.02(f) (2000 Kan. Ct. R. Annot. 35). See also *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1034, 850 P.2d 773 (1993) (holding that appellate court could not consider appellant's argument which hinged on a motion to intervene which, although it was attached to the brief, was not part of the record on appeal); *Frans v. Gausman*, 27 Kan. App. 2d 518, 527, 6 P.3d 432 (2000) (noting that material in appendix was not substitute for record on appeal); *Zeferjohn v. Shawnee County Sheriff's Dept.*, 26 Kan. App. 2d 379, 383, 988 P.2d 263 (1999) (holding that a police report which was attached as an appendix to the brief could not be considered by the panel as it was not part of the record on appeal);

*Cherryvale Grain Co. v. First State Bank of Edna,* 25 Kan. App. 2d 825, 832-33, 971 P.2d 1204 (1999) (holding that appellate court could not consider letter which was attached to brief but which was not part of the record on appeal); *State ex rel. Secretary of SRS v. Huffman,* 22 Kan. App. 2d 577, 582, 920 P.2d 965 (1996) (holding that mother's domestic relations affidavit could not be considered by court as it was not part of the record on appeal even though it was attached as an appendix to the brief); *Cline v. Tittel,* 20 Kan. App. 2d 695, 702-03, 891 P.2d 1137, *rev. denied* 257 Kan. 1091 (1995) (refusing to consider minutes of school board meeting where they were not part of the record but were attached as an appendix to the brief).

## VII. CONCLUSION

In determining the appropriate discipline to be imposed for violating the disciplinary rules, we consider the facts surrounding the violation as well as any aggravating or mitigating circumstances. *State v. Stakes,* 227 Kan. 711, 720, 608 P.2d 997 (1980).

There is clear and convincing evidence that the respondent violated KRPC 3.3(a)(1); KRPC 8.4(d); KRPC 8.4(g); and Supreme Court Rules 207(b) and 211(b).

A majority of the court holds that the discipline imposed should be indefinite suspension.

IT IS THEREFORE ORDERED that imposition of discipline against Gershater be indefinite suspension commencing on this date for her violation of the disciplinary rules of the Supreme Court.

IT IS FURTHER ORDERED that Gershater shall forthwith comply with Supreme Court Rule 218 (2000 Kan. Ct. R. Annot. 266).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to Gershater.