501 P.3d 776
Francis RUDNICKI and Pamela Rudnicki, as parents, guardians and next friends of Alexander Rudnicki, a minor child, Petitioners,
v.Peter BIANCO, D.O., Respondent.
Supreme Court Case No. 19SC631 Supreme Court of Colorado.
December 13, 2021
Rehearing Denied January 24, 2022
Attorneys for Petitioners: Ogborn Mihm, LLP, Thomas D. Neville, Clayton E. Wire, Denver, Colorado, Wahlberg, Woodruff, Nimmo & Sloane, LLP, David S. Woodruff, Denver, Colorado
Attorneys for Respondent: Messner Reeves LLP, Kendra N. Beckwith, Denver, Colorado
Attorneys for Amicus Curiae Children's Hospital Colorado: McConnell Van Pelt, LLC, Traci L. Van Pelt, Marjorie Taylor Smith, Denver, Colorado
Attorneys for Amicus Curiae Coloradans Protecting Patient Access: Wheeler Trigg O'Donnell LLP, Kevin J. Kuhn, Theresa Wardon Benz, Shawn K. Neal, Denver, Colorado
Attorneys for Amici Curiae Colorado Defense Lawyers Association, Colorado Civil Justice League, and American Property Casualty Insurance Association: Lent Parker Law LLC, Margrit Lent Parker, Firestone, Colorado
Attorneys for Amicus Curiae the Colorado Department of Health Care Policy and Financing: Philip J. Weiser, Attorney General, Alisa Campbell, Senior Assistant Attorney General, Denver, Colorado Attorneys for Amicus Curiae Colorado Trial Lawyers Association: Leventhal Puga Braley P.C., Julia Thompson, Molly Greenblatt, Denver, Colorado, The Komyatte Law Firm LLC, David P. Mason, Lakewood, Colorado
En Banc
JUSTICE GABRIEL delivered the Opinion of the Court.
¶1 In this medical malpractice action arising from substantial injuries that an infant suffered during his birth, we must determine who may recover damages for the medical expenses that a child incurs prior to turning eighteen. Specifically, we granted certiorari to decide (1) whether to adhere to a common law rule under which only a minor plaintiff's parents may recover tort damages for medical expenses incurred by their unemancipated minor child and (2) if we adhere to that rule, whether the Colorado Department of Health Care Policy and Financing ("HCPF") may properly assert, against any amounts recovered by the child, a lien to recoup the pre-majority medical expenses that HCPF paid on the child's behalf, such that an exception to the common law rule applies.1 ¶2 We now conclude that the traditional rationales for the common law rule no longer apply and that the realities of today's health care economy compel us to abandon that rule. Accordingly, we conclude that in cases involving an unemancipated minor child, either the child or their parents may recover the child's pre-majority medical expenses, but double recovery is not permitted (we are intentionally using the singular "they" in this opinion). In light of this determination, we need not decide whether an exception to the common law rule applies in this case.
¶3 We therefore reverse the judgment of the division below.
I. Facts and Procedural History
¶4 On October 5, 2005, Alexander Rudnicki suffered serious injuries during his birth when OB-GYN Peter Bianco, D.O., negligently performed an operative vaginal delivery using a vacuum extractor to assist in that delivery. At birth, Alexander had severe scalp abrasions and bruising on his skull, and medical staff observed him to be floppy, quiet, and unresponsive, with diminished function and depressed Apgar scores. Alexander was immediately intubated and required intensive medical treatment, which revealed that he had suffered injuries to his brain as a result of the trauma to his scalp and skull caused by the vacuum extraction. As a result of his injuries, Alexander has required ongoing physical, occupational, and speech therapy; he is intellectually disabled and enrolled in special education at school; and he is not likely to be able to live independently in the future.
¶5 In 2014, Alexander's parents, Francis and Pamela Rudnicki, in both their individual capacities and as parents, guardians, and next friends of their son, filed a complaint against Dr. Bianco and the hospital where Alexander was born, alleging, among other things, professional negligence by Dr. Bianco. Dr. Bianco moved to dismiss, asserting, in pertinent part, that Alexander's parents did not bring their individual claims against him within the applicable two-year statute of limitations set forth in section 13-80-102.5, C.R.S. (2021). The district court agreed and dismissed Francis and Pamela Rudnicki's individual claims, and the case proceeded to trial with Alexander as the sole plaintiff. A jury ultimately found that Dr. Bianco had acted negligently and awarded Alexander damages totaling $4 million, including, among other things, $325,000 for past medical expenses and $110,000 for future medical expenses until Alexander reaches the age of twenty-two.
¶6 Dr. Bianco subsequently filed a post-trial motion to reduce this verdict. In his motion, he argued, as pertinent here, that under Colorado common law, only Alexander's parents could recover Alexander's pre-majority medical expenses and, therefore, the court was required to deduct from the verdict the medical expenses incurred prior to Alexander's eighteenth birthday.
¶7 The district court ultimately agreed with Dr. Bianco and vacated the entirety of the jury's $325,000 award for past medical expenses, as well as sixty percent of the jury's $110,000 award for future medical expenses until Alexander reached the age of twenty-two (i.e., $66,000, representing the expenses incurred from the date of the verdict, when Alexander was approximately twelve years old, until he would reach the age of eighteen; Dr. Bianco did not contest the portion of the award corresponding to medical expenses that Alexander would incur between the ages of eighteen and twenty-two). In so ruling, the district court relied on Pressey v. Children's Hospital Colorado, 2017 COA 28, ¶ 26, 488 P.3d 151, 159, in which a division of our court of appeals had upheld the common law rule barring minors from recovering their pre-majority medical expenses. The district court thus concluded that the claim for pre-majority medical expenses belonged solely to Alexander's parents, but their claim for such expenses had been dismissed as time-barred.
¶8 Alexander appealed, arguing that applying the common law rule in the modern health care economy violates public policy and, therefore, the rule should be abandoned in favor of a rule allowing minor plaintiffs, as co-owners of their claim for pre-majority medical expenses, to recover those expenses. Alternatively, Alexander asserted that even if the common law rule applied, he fell within an exception to that rule that permits minors to seek pre-majority medical expenses when "the minor child has paid or agreed to pay the expenses." Id. at ¶ 28, 488 P.3d at 159 (quoting Betz v. Farm Bureau Mut. Ins. Agency of Kan., Inc., 269 Kan. 554, 8 P.3d 756, 760 (Kan. 2000) ). On this point, Alexander reasoned that HCPF, the state administrator of Medicaid, could seek reimbursement for his pre-majority medical bills by placing a lien on any judgment that he had obtained against a negligent third-party. Thus, Alexander asserted that he was personally liable for the expenses and therefore fell within the above-noted exception to the common law rule. (Alexander further contended that he fell within the exception because Anthem was also pursuing reimbursement for the pre-majority medical bills that it had paid, but Alexander did not pursue this argument before us.)
¶9 In a unanimous, unpublished decision, a division of the court of appeals affirmed the district court's reduction of the damages award. Rudnicki v. Bianco, No. 18CA0215, ¶¶ 2, 50, 2019 WL 2385683 (June 6, 2019). Although the division acknowledged what it perceived to be "the national trend toward abandonment of the common law rule and allowing both a minor and the minor's parents to recover the minor's pre-majority medical expenses," it felt compelled to follow precedent from this court that appeared to have adhered to that rule. Id. at ¶ 21. The division also rejected Alexander's alternative argument that, even were the common law rule to apply, he is entitled to recover pre-majority medical expenses under the above-described exception to that rule. Id. at ¶¶ 27-43. Specifically, as pertinent here, the division disagreed with Alexander's premise that HCPF could recover for the pre-majority medical expenses that it had advanced by imposing a lien against the judgment that Alexander had obtained. Id. at ¶¶ 41-43. The division reasoned that for HCPF to have a statutory lien against Alexander's recovery, it had to have paid for medical expenses for which a third-party was liable, but the trial court had vacated the jury award for Alexander's pre-majority medical expenses (and, thus, presumably, no third-party was liable for those expenses). Id. at ¶¶ 40-41. The division further opined that HCPF's "lien may attach to damages awarded for Alexander's future, post-majority medical expenses, but only if Alexander intends to stay on Medicaid," and nothing in the record indicated any such intent. Id. at ¶¶ 42-43. Thus, the division concluded that Alexander was not liable to HCPF for reimbursement of the pre-majority medical expenses that HCPF had advanced, and, therefore, the exception to the common law rule did not apply. Id. at ¶ 43.
¶10 Alexander petitioned this court for certiorari review, and we granted his petition.
II. Analysis
¶11 We begin by setting forth the law guiding our review, including the applicable standard of review and the principles governing the recovery of an injured minor's damages. After then acknowledging the principles of stare decisis, we consider the theoretical underpinnings of the common law rule and conclude that further adherence to that rule is no longer justified and indeed undermines Colorado's public policy goals.
A. Applicable Law
¶12 Whether the common law rule should continue to apply and, therefore, whether injured, unemancipated minors can recover their pre-majority medical expenses are questions of law that we review de novo. See State v. Medved, 2019 CO 1, ¶ 13, 433 P.3d 33, 36 (noting that we review questions of law de novo). ¶13 The common law rule provides that only the parents of an unemancipated minor child —and not the child —have the right to recover the child's pre-majority medical expenses. See, e.g., Pressey, ¶ 26, 488 P.3d at 159 ; see also Restatement (Second) of Torts § 703 (1977) (providing that a tortfeasor who is liable to a minor child for bodily harm is subject to liability to "the parent who is under a legal duty to furnish medical treatment for any expenses reasonably incurred or likely to be incurred for the treatment during the child's minority"). The minor may, however, recover expenses that they actually incur during their minority and expenses for their pain and suffering, post-majority medical expenses, and impairment of future earning capacity. See, e.g., Pressey, ¶ 26, 488 P.3d at 159 ; State ex rel. Packard v. Perry, 221 W.Va. 526, 655 S.E.2d 548, 554 (2007).
¶14 Jurisdictions that follow the common law rule typically recognize four exceptions to that rule. These exceptions allow a minor to recover when
(1) the minor child has paid or agreed to pay the expenses; (2) the minor child is legally responsible for payment (emancipation, death or incompetency of the parents); (3) ... the parents waive or assign their right to recovery in favor of the minor; or (4) ... recovery of expenses is permitted by statute. Pressey, ¶ 28, 488 P.3d at 159 (quoting Betz, 8 P.3d at 760 ).
¶15 To date, this court appears to have subscribed, at least implicitly, to the foregoing principles. For example, in Pawnee Farmers' Elevator Co. v. Powell, 76 Colo. 1, 227 P. 836, 839 (1924), we concluded that because "a father is entitled to the earnings of his [unemancipated] son during minority," the son could not recover for possible future earnings during the remaining period of his minority. Similarly, in Wales v. Howard, 164 Colo. 167, 433 P.2d 493, 496 (1967), we concluded that a minor child could not recover for past medical expenses incurred by him but billed to his father absent evidence that the father had relinquished this claim to him. And in Elgin v. Bartlett, 994 P.2d 411, 416 & n.3 (Colo. 1999), we acknowledged that the parents of an injured minor have derivative claims for "medical and other expenses incurred because of the child's injuries, loss of household and similar services that the injured child would have rendered during his or her minority, and loss of the child's earning capacity during minority." We further clarified that these claims "are separate from the claims of the injured" child. Id. at 416.
¶16 The foregoing principles have obvious implications for the applicable statute of limitations. Pursuant to section 13-80-102.5(1), an action for negligence against a health care professional generally must be brought within two years after the date that such action accrues. Such an action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13-80-108(1), C.R.S. (2021). This limitations period is tolled, however, with regard to "[a] person otherwise under disability as defined in section 13-81-101[, C.R.S. (2021) ], in which case the action may be maintained within the time period as provided in section 13-81-103[, C.R.S. (2021)]." § 13-80-102.5(3)(d)(II). Section 13-81-101(3) defines "person under disability" as "any person who is a minor under eighteen years of age, a mental incompetent, or a person under other legal disability and who does not have a legal guardian." And we have construed section 13-81-103(1)(c) to protect persons like Alexander, who is a "person under disability" and for whom the court has not appointed a legal representative. See Elgin, 994 P.2d at 414. Thus, we have concluded that, for purposes of an unemancipated minor's negligence claim against a health care professional, the statute of limitations set forth in section 13-80-102.5(1) "begins to run when the minor reaches the age of eighteen or when, if it does, a court appoints a legal representative for the minor." Elgin, 994 P.2d at 414.
¶17 As the foregoing makes clear, although the applicable statute of limitations is tolled with respect to a minor child's negligence claim against a health care professional, it is not tolled with respect to the parents' derivative claim for the child's pre-majority medical expenses. Id. at 416. As a result, under the common law rule, unless the parents of an injured minor either relinquish their claim for pre-majority medical expenses to the minor or assert that claim within the two-year statute of limitations, a tortfeasor will escape responsibility for some —and perhaps a substantial portion—of the damages that the tortfeasor caused the child. And this is so even though the child did nothing to waive any right to recover such damages and even though the child might have had until their twentieth birthday to bring such a claim had the claim belonged to them.
B. Principles of Stare Decisis ¶18 Any discussion of whether to adhere to the common law rule must begin with the principles of stare decisis. "Stare decisis is a judge-made doctrine that requires courts to follow preexisting rules of law." Love v. Klosky, 2018 CO 20, ¶ 14, 413 P.3d 1267, 1270. Adhering to principles of stare decisis is generally the preferred course because it promotes predictability in the law, reliance on judicial precedent, and the integrity of the judicial process. Id. Nonetheless, we have recognized that courts may depart from a prior ruling when sound reasons exist for doing so. Id. at ¶ 15, 413 P.3d at 1270. Specifically, we have said that "[w]e will depart from our existing law only if we are clearly convinced that (1) the rule was originally erroneous or is no longer sound because of changing conditions and (2) more good than harm will come from departing from precedent." Id. Accordingly, we turn next to the theoretical underpinnings of the common law rule and consider whether the conditions that originally justified that rule have changed and whether more good than harm would come from abandoning the rule.
C. Traditional Rationales for the Common Law Rule ¶19 The principle under which certain relationships give rise to derivative actions whereby one person can recover for injuries sustained by another traces its origins to early Roman law, in which the paterfamilias, as head of the household of relatives, dependents, and enslaved people, was the person entitled to bring an action for violence committed against or insults to his wife, children, slaves, or other members of his household. See Francis Bowes Sayre, Inducing Breach of Contract, 36 Harv. L. Rev. 663, 663 (1923). The underlying premise for this rule was that an insult to a member of the household was a form of insult to the paterfamilias himself. Id.; see also Evelyn Atkinson, Out of the Household: Master-Servant Relations and Employer Liability Law, 25 Yale J.L. & Human. 205, 208 (Summer 2013) (observing that the master-servant, husband-wife, and parent-child relationships fell within the broader notion of "household government," in which the master of the household exercised domestic rule over his dependents).
¶20 These principles formed the underpinnings in this country of the form of action for trespass per quod servitium amisit. See Maxson v. Del., L. & W. R. Co, 112 N.Y. 559, 20 N.E. 544, 544-45 (1889) ; Per quod servitium amisit, Black's Law Dictionary (11th ed. 2019) (defining "per quod servitium amisit" to mean "[w]hereby he lost the services (of his servant)"). Such an action reflected the fact that "[t]he law gives to the husband, to the parent, and to the master a right of action for any injury to the wife, minor child, or servant, when caused by the actionable acts of another, per quod servitum [sic] amisit." Maxson, 20 N.E. at 544-45 ; see also Estate of DeSela v. Prescott Unified Sch. Dist. No. 1, 226 Ariz. 387, 249 P.3d 767, 769 (2011) (describing how prior cases had "treated the parent-child relationship in economic terms, much like the relation between master and servant").
¶21 This cause of action thus amounted to a claim for infringement of a man's property right. See Ireland Elec. Corp. v. Ga. Highway Express, Inc., 166 Ga.App. 150, 303 S.E.2d 497, 498 (1983). Accordingly, as the Vermont Supreme Court explained:
A master can maintain an action for the beating of his servant per quod servitium amisit. The loss of service is the cause of action. ... This doctrine also applies to actions brought by a parent for injuries to his child, when brought for loss of the child's services. In such cases the right of action is founded on the relation of master and servant, and not on that of parent and child .... Trow v. Thomas , 70 Vt. 580, 41 A. 652, 654 (1898) (citation omitted).
¶22 Societal attitudes have obviously shifted away from treating children and other household members as chattel, but a number of jurisdictions have nonetheless retained the common law rule, now primarily on the theories that it (1) allows the party who actually suffered the damages (namely, the parents, who have a legal obligation to support their children) to recover the loss caused by a tortfeasor and (2) prevents double recoveries. See Packard , 655 S.E.2d at 555 ; see also Sox v. United States, 187 F. Supp. 465, 469 (E.D.S.C. 1960) ("The underlying reason for [the common law rule] is to prevent double recoveries. It is not to excuse liability."); DeSela, 249 P.3d at 769 (noting that avoiding double recoveries was a rationale underpinning the common law rule); 67A C.J.S. Parent and Child § 331, at 414 (2002) ("The parental right to recover expenses when a child is injured stems from the parents' legal obligation to support a child."). The question thus becomes whether circumstances have changed such that adherence to the common law rule remains necessary to achieve the modern objectives of that rule.
¶23 As it exists today, the common law rule appears to be predicated on a presumption that parents alone pay for the health care expenses of their children and, accordingly, are the real parties in interest regarding medical expenditures related to tortious conduct causing injury to their children. This presumption, however, reflects a time when parents had no choice but to pay the costs of their child's care out of pocket, and it ignores the advent of private health insurance plans in the 1930s, the creation of the public Medicare and Medicaid programs in 1965, and the passage of the Affordable Care Act in 2010, all of which have dramatically altered how families pay for medical care. Today, subject to certain exceptions, federal law requires parents to insure their children, 26 U.S.C. § 5000A(a), and over ninety-five percent of Colorado children have health insurance coverage, see Colo. Health Inst., 2021 Colorado Health Access Survey: Health Insurance, Ages 0-18, https://www.coloradohealthinstitute.org/sites/default/files/file_attachments/Health%20Insurance%20Workbook%202021.xlsx [https://perma.cc/6UZM-8R9X].
¶24 In addition, when children are insured, their parents are not solely responsible for paying their medical expenses, and sometimes the parents have no such obligation at all. For example, when Medicaid is a child's health insurer, it generally covers the full costs of primary, specialty, mental health, dental, and emergency care. See Health First Colo., Health First Colorado Benefits & Services, https://www.healthfirstcolorado.com/benefits-services/ [https://perma.cc/EGJ5-BUZP].
¶25 And although we acknowledge that parents of privately-insured minors may be expected to contribute to a child's care in the form of premiums, co-pays, co-insurance, and deductibles, we also recognize that, in many cases, the costs of insurance are subsidized by a parent's employer or the government. See Explaining Health Care Reform: Questions About Health Insurance Subsidies, Kaiser Family Found. (Oct. 29, 2021), https://www.kff.org/health-reform/issue-brief/explaining-health-care-reform-questions-about-health-insurance-subsidies/ [https://perma.cc/46DM-UWR9].
¶26 In this age of widespread health insurance, particularly for children, then, a rule that treats parents as the sole interested parties with regard to a child's medical expenses is no longer in sync with the realities of the health care economy. Moreover, we perceive no reason why the common law rule is any more adept at shielding a defendant from double recovery than is a rule that allows both an injured child and their parents to recover but expressly bars double recoveries.
¶27 Recognizing these realities, the trend across the United States has been to renounce (or at least substantially retreat from) the common law rule, so as to allow children to recover their pre-majority medical expenses. Thus, at least eighteen states now allow children to recover pre-majority medical expenses, even if their parents do not waive or file a claim for these damages within the statute of limitations, and eight of these states recognize that a claim for pre-majority medical expenses belongs to both the injured children and their parents. See, e.g., DeSela, 249 P.3d at 770 ; White v. Moreno Valley Unified Sch. Dist., 181 Cal.App.3d 1024, 226 Cal. Rptr. 742, 745-46 (1986) ; Scott Cnty. Sch. Dist. 1 v. Asher, 263 Ind. 47, 324 N.E.2d 496, 499 (1975) ; Boley v. Knowles, 905 S.W.2d 86, 90 (Mo. 1995) ; Lopez v. Sw. Cmty. Health Servs., 114 N.M. 2, 833 P.2d 1183, 1192 (Ct. App. 1992) ; Czimmer v. Janssen Pharms., Inc., 122 A.3d 1043, 1064 (Pa. Super. Ct. 2015) ; Ho-Rath v. R.I. Hosp, 115 A.3d 938, 950 (R.I. 2015) ; Packard, 655 S.E.2d at 561.
¶28 Six of the eighteen states toll the statute of limitations on a parent's claim during the child's minority. See, e.g., Carter v. Univ. of Med. & Dentistry of N.J., 838 F. Supp. 957, 962 (D.N.J. 1993) ; Dewey v. Zack, 272 Ill.App.3d 742, 209 Ill.Dec. 465, 651 N.E.2d 643, 648 (1995) ; Matranga v. W. End Tile Co., 357 Mass. 194, 257 N.E.2d 433, 435 (1970) ; Fehrenbach v. O'Malley, 113 Ohio St.3d 18, 2007 -Ohio- 971, 862 N.E.2d 489, 493 ; Or. Rev. Stat. § 12.160(5) (2019); Korth v. Am. Fam. Ins. Co., 115 Wis.2d 326, 340 N.W.2d 494, 497 (1983).
¶29 And four states appear to treat a parent's failure to bring a claim for pre-majority medical expenses within the statute of limitations as a relinquishment or waiver of that claim, allowing the child to recover at that point. See, e.g., Bland v. Abbott Laboratories, Inc., No. 3:11-CV-430-H, 2012 WL 524473, at *3 (W.D. Ky. Feb. 16, 2012) ; Villa v. Roberts, 80 F. Supp. 2d 1229, 1233-34 (D. Kan. 2000) ; Myer v. Dyer, 643 A.2d 1382, 1387 (Del. Super. Ct. 1993) ; Taft v. Jumbo Foods, Inc., 155 Idaho 511, 314 P.3d 193, 202 (2013).
¶30 We agree with the many states that have concluded that the above-described and now-outdated rationales for the common law rule no longer support adherence to that rule. We thus turn to the question of whether more good than harm would result from abandoning the rule, which necessarily requires us to consider the public policy rationales advanced by both sides here.
D. Public Policy Considerations ¶31 Dr. Bianco and his amici advance a number of public policy arguments to justify retaining the common law rule. We are unpersuaded by any of these arguments.
¶32 First, Dr. Bianco and his amici assert that the common law rule promotes parental responsibility because "parents are more likely to incur the costs of the necessary medical care for an injured child if those costs may be recovered from the person who caused the injury." We do not subscribe to such a cynical view, and we decline to assume that parents will deny necessary treatment to an injured child based on the nuances of tort law, particularly given that section 18-6-401, C.R.S. (2021), criminalizes parents' failure to provide their children with proper medical care.
¶33 Second, Dr. Bianco and his amici assert that abandoning the common law rule would otherwise be detrimental to children's interests, although they do not make clear why this is so, and we perceive the opposite effect. When a child is injured, particularly at birth, the full nature and extent of the child's injuries may not be known for many years. If a child begins suffering complications (or suffers additional complications) after the limitations period for the parents' claim has expired, then the common law rule would preclude any member of the family from recovering for such losses (or additional losses). We cannot see how a rule that bars a child or their parents from eventually recovering unforeseen (and presently unforeseeable) medical expenditures serves that child's best interests. Nor do we perceive how the application of the common law in a case like this one, which would result in a substantial diminution of the damages that a child may recover for their injuries through no fault of the child's, somehow benefits the child.
¶34 Third, Dr. Bianco and his amici posit that adherence to the common law rule would advance the interests of the state in general. In this regard, we acknowledge Dr. Bianco's concern that abandoning the rule creates opportunities for parties to litigate their disputes long after an injury occurs, often when memories have faded and some witnesses may be unavailable or difficult to locate. These evidentiary issues, however, already arise under the common law rule and our current statutes of limitation, which, as noted above, can allow injured children to recover certain expenses until they are twenty years old. See § 13-80-102.5(1), (3)(d)(II) (providing that a negligence action against a health care professional generally must be brought within two years after the cause of action accrues but tolling that provision for persons otherwise under disability); § 13-81-101(3) (defining "person under disability" to include "a minor under eighteen years of age"); see also Elgin, 994 P.2d at 414 (concluding that the statute of limitations set forth in section 13-80-102.5(1) "begins to run when the minor reaches the age of eighteen or when, if it does, a court appoints a legal representative for the minor"); Pressey, ¶ 26, 488 P.3d at 159 (noting that, in Colorado, a minor "may recover expenses the minor actually incurs during minority and for pain and suffering and post-majority impairment of future earning capacity").
¶35 We do not perceive how adding one category of damages to the existing types of losses for which a minor may recover, potentially years down the road, significantly alters the existing legal landscape in Colorado. And considering that at least eighteen states allow a child or their parents to recover pre-majority medical expenses beyond the limitations period, without apparent difficulty or untoward effects, we do not portend the same panoply of horribles — including hikes in malpractice insurance premiums and undue burdens on hospitals — that Dr. Bianco and his amici foresee.
¶36 We likewise are unpersuaded by the assertions that (1) Alexander's parents, and not Alexander, have incurred the pre-majority medical expenses at issue here; and (2) by abandoning the common law rule, we have overstepped our proper role and have made a policy choice that effectively overrides our legislature's decision to give parents of an injured child two years from the time that they know or reasonably should know that they have such a claim to file suit.
¶37 As to the first point, it is not at all clear that Alexander's parents, and not Alexander, have incurred the medical expenses at issue. Among other things, such an assertion ignores the parties' substantial disagreement as to whether HCPF can recover the pre-majority medical expenses that it has advanced by imposing a lien against the judgment that Alexander has obtained. If, as Alexander argues, with some force and contrary to the ruling of the division below, that HCPF can impose such a lien, then he would, in fact, have incurred the medical expenses at issue. In light of our decision to abandon the common law rule, however, we need not reach this issue.
¶38 As to the second point, regarding our legislature's policy choices, the argument appears to assume, albeit incorrectly, that the legislature has adopted the common law rule. As noted above, however, the legislature has enacted a two-year statute of limitations for negligence claims against a health-care professional, and it has expressly tolled that limitations period for minors like Alexander, for whom a court has not appointed a legal guardian, thereby allowing such claims to be brought until as late as the minor's twentieth birthday. See §§ 13-80-102.5(1), (3)(d)(II) ; 13-81-103(1)(c); Elgin, 994 P.2d at 414. Nothing in the foregoing provisions (or in any other provisions of which we are aware) states that only a minor's parents have the right to recover their child's pre-majority medical expenses. Nor has our legislature otherwise adopted the common law rule. Accordingly, our determination today is fully consistent with —and in no way contradicts — the policy choices made by our legislature, and we do no more than abandon a court-made doctrine that is no longer supported by the policies that previously sustained it.2 ¶39 In contrast to the foregoing public policy arguments, Alexander contends that the negative impact of our ongoing adherence to the common law rule on Colorado's Medicaid program undermines broader public policy goals. We are persuaded by this concern. ¶40 The General Assembly has recognized the importance of "[e]nsuring that all people have access to affordable, quality, continuous, and equitable health-care" and that "Coloradans with low incomes" have "historically and systemically faced barriers to health." § 10-16-1302(1)(b)-(c), C.R.S. (2021). Medicaid is designed to address these barriers by providing "medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services." Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986) ; see also § 25.5-4-102, C.R.S. (2021) (detailing the purpose of the Colorado Medical Assistance Act). Thus, almost forty percent of Colorado children are covered by Medicaid. Colo. Health Inst., 2021 Colorado Health Access Survey: Health Insurance, Ages 0-18, https://www.coloradohealthinstitute.org/sites/default/files/file_attachments/Health%20Insurance%20Workbook%202021.xlsx [https://perma.cc/6UZM-8R9X]. ¶41 In order to participate in Medicaid, federal law requires states to seek reimbursement for medical expenditures when a liable third party is identified. 42 U.S.C. § 1396a(a)(25)(A)-(B) ; 42 C.F.R. § 433.140(a)(1). This requirement "protects the public fisc while preventing Medicaid beneficiaries from receiving a windfall." Tristani ex rel. Karnes v. Richman, 652 F.3d 360, 373 (3d Cir. 2011). To this end, section 25.5-4-301(5)(a), C.R.S. (2021), provides that, when HCPF has furnished medical assistance to or on behalf of a Medicaid recipient and for which a third party is liable, HCPF shall have an automatic statutory lien against "any judgment, award, or settlement in a suit or claim against such third party," to the extent of the amount of medical assistance provided.
¶42 Under the common law rule, when an injured child is covered by Medicaid and their parents fail to file a timely claim for pre-majority medical expenses, neither the child nor their parents can recover these damages, thereby reducing (if not eliminating) the pool of funds from which HCPF can seek reimbursement. In turn, less funding is available to pay for the care of individuals who rely on Medicaid throughout the state. And in such a scenario, the tortfeasor escapes liability while taxpayers are left holding the bag, which is directly contrary to the long-settled principle that "whoever unlawfully injures another shall make her whole." Preston v. Dupont, 35 P.3d 433, 441 (Colo. 2001) ; accord Bullerdick v. Pritchard, 90 Colo. 272, 8 P.2d 705, 706 (1932).
¶43 In addition to the foregoing, as this case amply demonstrates, the exceptions to the common law rule can often generate difficult questions of law, including questions regarding the propriety and scope of medical liens. It is not clear to us why anyone is better served by retaining antiquated rules that trigger substantial litigation, rather than adopting a clear and simple rule that permits children to recover and medical providers to assert liens, as allowable by law, against that recovery.
¶44 Accordingly, we are persuaded that sound reasons exist for departing from the common law rule and that more good than harm will come from our doing so. We therefore now conclude that injured children may recover their pre-majority medical expenses in cases like this one. We thus overrule Pressey and any decisions of this court or of divisions of our court of appeals that have explicitly or implicitly followed the common law rule.
¶45 Having so determined, we recognize that situations exist in which parents continue to shoulder perhaps substantial out-of-pocket costs for a child's injuries. Accordingly, we further conclude that a flexible rule —one that allows both parents and their unemancipated minor child to recover damages for pre-majority expenses as long as no double recovery is permitted—best meets the unique challenges faced by families of injured children. Indeed, of the approaches adopted by states that have abandoned the common law rule, recognizing joint ownership of such claims, subject to a prohibition on double recovery, appears to be the most common. See, e.g., DeSela, 249 P.3d at 770 ; White, 226 Cal. Rptr. at 745-46 ; Scott Cnty. Sch. Dist. 1, 324 N.E.2d at 499 ; Boley, 905 S.W.2d at 90 ; Lopez, 833 P.2d at 1192 ; Czimmer, 122 A.3d at 1064 ; Ho-Rath, 115 A.3d at 950 ; Packard, 655 S.E.2d at 561. We agree with this approach, which acknowledges the settled principle of tort law that those who incur economic damages may recover them, and we follow that approach here.
¶46 We emphasize that our decision today addresses the narrow question of who may seek a specific remedy when an unemancipated minor is injured. It does not create a new class of claims for courts to adjudicate. Nor does it impose new duties or obligations on the parties. Accordingly, we have little concern that our departure from the common law rule creates an unworkable situation for the judiciary or unfairly disturbs the settled expectations of the parties, as Dr. Bianco contends. Instead, our decision reflects the fact that the advent of health insurance, coupled with society's reticence to treat children as their parents' servants, leave the common law rule bereft of theoretical support.
¶47 In light of our foregoing determination, we need not address the question of whether HCPF has a valid lien against Alexander's recovery of post-majority damages, such that an exception to the common law rule applies here.
III. Conclusion ¶48 For these reasons, we abandon the common law rule that allows only parents to recover their injured, unemancipated minor child's pre-majority medical expenses, and we conclude that in cases involving an unemancipated minor child, either the child or their parents may recover such expenses, but double recovery is not permitted.
¶49 Accordingly, we reverse the judgment of the division below, and we remand this case for further proceedings consistent with this opinion.
JUSTICE HART dissents, and CHIEF JUSTICE BOATRIGHT and JUSTICE MÁRQUEZ join in the dissent.
JUSTICE HART, dissenting.
¶50 Although the majority does not mention the statute of limitations until paragraph sixteen of its opinion, that is what this case is really all about. Under current law, parents — who are legally responsible to provide for their child's medical care—have two years from the time they should have known of a cause of action to bring a claim against the alleged tortfeasor to recover medical expenses. §§ 13-80-102.5(1), 108(1) C.R.S. (2021). However, for purposes of an unemancipated minor's negligence claim against a health care professional, the statute of limitations set forth in section 13-80-102.5(1) "begins to run when the minor reaches the age of eighteen or when, if it does, a court appoints a legal representative for the minor." Elgin v. Bartlett, 994 P.2d 411, 414 (Colo. 1999). And, as we noted in Elgin, our General Assembly has not chosen to toll the statute of limitations on the parents' claims during the time that the limitations period on the child's claim is tolled. Id. at 414-16. Thus, the parties' arguments about who owns the claim for pre-majority medical expenses is fundamentally an argument about whether the statute of limitations began to run when Alexander Rudnicki's parents knew they had a claim (shortly after his birth) or whether the statute of limitations remains open until two years after Alexander's eighteenth birthday — twenty years after the tortious conduct that caused his injuries. ¶51 The majority opens its opinion by misstating the question presented. We are not tasked with determining "who may recover damages for the medical expenses that a child incurs prior to turning eighteen." Maj. op. ¶ 1 (emphasis added). Alexander Rudnicki, who was tragically injured at birth and is now sixteen years old, did not prove that he —rather than his parents — incurred any medical expenses. If he had, then under our settled law he would be entitled to recover damages for them. See Pressey v. Children's Hosp. Colo., 2017 COA 28, ¶¶ 26, 28, 488 P.3d 151, 159 (noting that a minor can recover pre-majority medical expenses if they actually incurred them). And, under our settled law, a child is not entitled to sue to recover medical expenses incurred by their parents. Id. That claim belongs to the parents because they incurred the expenses. See Elgin , 994 P.2d at 416, 420. The question we confront today is whether we should abandon our precedent in order to extend the statute of limitations for medical expense claims arising from injury to a child from the legislatively established two years to as many as twenty years. Because we are not legislators, we should not. I therefore respectfully dissent.
¶52 Everybody involved in this case agrees that Colorado law until today has provided that in general the parents of an injured child, not the child themselves, may bring a tort action seeking damages for the medical expenses associated with the child's injury. The General Assembly decided that the parents of an injured child have two years from the time they know or reasonably should know that they have such a claim to file suit. As we noted in Elgin, though the General Assembly has created certain tolling provisions — like that which applies to minors —it has not chosen to create an exception for claims like these. 994 P.2d at 416. The statute of limitations, together with the absence of a tolling provision, represents the General Assembly's policy determination that a two-year limit properly balances the plaintiff's need for time to sue with the defendant's need for finality and the difficulty of litigating stale claims.
¶53 Today, this court replaces this legislative policy determination with its own judgment about "broader public policy goals," maj. op. ¶ 39; it effectively repeals the legislature's two-year limitations period and enacts one that could lead to litigation as many as twenty years after the allegedly tortious conduct occurs. Not only is this policy decision outside the court's proper sphere of action, I fear that doing it through this sideways approach may have a range of unintended and harmful consequences.
¶54 To expand the statute of limitations for these claims, the court abandons Colorado's longstanding common law rule that the right to pursue claims for pre-majority medical expenses paid for a childhood injury belongs to the parents. The majority acknowledges that "we have said that ‘[w]e will depart from our existing law only if we are clearly convinced that (1) the rule was originally erroneous or is no longer sound because of changing conditions and (2) more good than harm will come from departing from precedent.’ " Id. at ¶ 18 (citing Love v. Klosky, 2018 CO 20, ¶ 15, 413 P.3d 1267, 1270 ). It then concludes that the reasons for the common law rule are no longer sound and that abandoning the rule will do more good than harm. The majority is wrong on both fronts.
I. Sound Reasons Support the Rule Giving a Right to Recover Medical Expenses to the Parents of a Minor Child
¶55 Certainly, it is an old rule that the parents, and not the child, are entitled to recovery for medical expenses incurred because of injury to a child. And certainly, because it is an old rule, if we trace it to its oldest common law origins, we can find legal citations that justify it with reference to men owning other people and to long-outdated sexist assumptions about the relationship between a male head of household and his wife and children. See, e.g., maj. op. ¶¶ 19-21. But nobody today — or I dare say in the past half-century — has justified the rule on those terms. The common law rule is justified today because the current reality is that parents—not infants, toddlers, or even teenagers — are responsible for the medical costs associated with the injury of a child. See In re Est. of Reed, 201 P.3d 1264, 1267 (Colo. App. 2008) ; see also § 14-6-110, C.R.S. (2021) ("The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."); § 14-10-115(10), C.R.S. (2021) (addressing a parent's obligation to provide a child's medical insurance and pay extraordinary medical expenses). As the majority concedes, parents remain legally responsible for their children. Maj. op. ¶ 25. Parents are generally legally obligated to insure their children. 26 U.S.C. § 5000A(a). Parents are the ones who make decisions, in consultation with doctors, about their children's medical care. See In re D.I.S., 249 P.3d 775, 780 (Colo. 2011) ("Parents have a fundamental liberty interest in the care, custody, and control of their children."); Parham v. J. R., 442 U.S. 584, 603, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) ("Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgments."); see also § 14-10-130, C.R.S. (2021) (addressing allocation of parental responsibility, including responsibility for decisions over health care).
¶56 Although his botched delivery tragically left him with serious injuries and associated medical expenses from the moment he entered this world, Alexander Rudnicki has not been asked to pay those expenses or to provide his own insurance to cover them. His parents have.1 The employer-provided health care that covered some of the expenses was not provided by baby Alexander's employer. It was provided by the employer of one of his parents. Alexander did not apply for Medicaid coverage. His parents did. Alexander's parents were responsible for ensuring that his medical needs were covered. This responsibility may be historically rooted in justifications that make no sense today, but that does not mean that the responsibility itself makes no sense today.
¶57 Moreover, the common law rule, when considered in its entirety, rests on a central principle of tort law, which the court also effectively abandons today: the person who has incurred economic damages is the person entitled to recover them. Elgin, 994 P.2d at 416. For this reason, Colorado, like the many other jurisdictions that follow the common law rule, recognizes exceptions to the rule that a minor cannot recover for pre-majority medical expenses when
(1) the minor child has paid or agreed to pay the expenses; (2) the minor child is legally responsible for payment (emancipation, death or incompetency of the parents); (3) ... the parents waive or assign their right to recovery in favor of the minor; or (4) ... recovery of expenses is permitted by statute. Pressey, ¶ 28, 488 P.3d at 159 (quoting Betz v. Farm Bureau Mut. Ins. Agency of Kan., Inc., 269 Kan. 554, 8 P.3d 756, 760 (2000) ). The court of appeals correctly concluded that the Rudnickis failed to show that any of these exceptions apply in this case. But these exceptions are generally sufficient to ensure that a minor who actually incurs medical expenses themselves will be able to recover for those expenses. The common law rule is therefore sound, and we should not abandon it.
¶58 Contrary to the majority's assertion otherwise, there is not a clear nationwide "trend" in the direction of allowing children to sue to recover pre-majority medical expenses. Maj. op. ¶ 27. Nine of the eighteen cases the majority cites in support of this trend were decided before our decision in Elgin, our most recent affirmation of the common law rule. One is a federal district court case that purports to apply Kansas law. See Villa v. Roberts, 80 F. Supp. 2d 1229, 1233-34 (D. Kan. 2000). In fact, Kansas adheres to the common law rule. See Wilson v. Knight, 26 Kan.App.2d 226, 982 P.2d 400, 406 (1999).
¶59 Notably, many of the states that do permit children to sue to recover those expenses do so because they have a robust version of the "common law doctrine of necessaries" — the idea that a child is independently liable for those medical expenses. See State ex rel. Packard v. Perry , 221 W.Va. 526, 655 S.E.2d 548, 559 (2007) ("Application of the common law doctrine of necessaries confirms that in West Virginia, a minor may be responsible for his or her own medical expenses."); White v. Moreno Valley Unified Sch. Dist., 181 Cal.App.3d 1024, 226 Cal. Rptr. 742, 745 (1986) ("The parents of a minor are normally responsible for medical and hospital care furnished the minor, and the cause of action to recover those items normally rests with the parents. But the child is also liable for the reasonable value of those expenses." (quoting Bauman v. San Francisco, 42 Cal.App.2d 144, 108 P.2d 989, 999 (1940) )); Scott Cnty. Sch. Dist. 1 v. Asher, 263 Ind. 47, 324 N.E.2d 496, 499 (1975) ("The necessity for [medical expenses] is seldom disputed. There is no reason to insulate either child or parent from the doctor's or hospital's suit. ... Since the child received the service and it was necessary, he is liable."); Boley v. Knowles, 905 S.W.2d 86, 89 (Mo. 1995) ("The common law vested the medical expense action in the parents because the parents were responsible to pay such expenses. Because minors can often be held liable for medical expenses incurred for their treatment, this rationale for granting the primary cause of action for medical expenses in the parents is questionable."); Lopez v. Sw. Cmty. Health Servs., 114 N.M. 2, 833 P.2d 1183, 1192 (Ct. App. 1992) ("[M]inors are usually liable for the value of necessaries furnished to them."). In these states, the exception that Colorado has recognized to the common law rule — the idea that a child can recover for medical expenses if they are actually liable for them, Pressey, ¶¶ 26, 28, 488 P.3d at 159 — is simply in force at all times.
¶60 And, in contrast to today's decision, in six of the states cited by the majority to support its decision to abandon stare decisis, maj. op. ¶ 28, there was no judicial abandonment of a previously adhered to common law rule.2 Instead, it was the state legislature that made the policy decision to toll the statute of limitations on the parents' claims so that it is the same as that applicable to the child's claims. See 735 Ill. Comp. Stat. 5/13-212(b) (2021) (establishing an eight-year statute of limitations for medical claims arising out of care provided to a minor); 735 Ill. Comp. Stat. 5/13-203 (2021) (applying the same statute of limitations and tolling rules to loss of consortium claims based on injury to a child); N.J. Stat. Ann. § 2A:14-2.1 (2021) (providing that a time period for the commencement of a parent's claim is coextensive with the period applicable to the child's claim); Or. Rev. Stat. § 12.160(5) (2021); Matranga v. W. End Tile Co., 357 Mass. 194, 257 N.E.2d 433, 435 (1970) (citing the now-repealed statute of limitations that provided that a parent's claims can be tried with the child's, so long as the child has a pending action); Fehrenbach v. O'Malley, 113 Ohio St.3d 18, 2007 -Ohio- 971, 862 N.E.2d 489, 493 (citing the Ohio statute that tolls a minor's claims until they have reached majority and provides that parties with joint and inseparable claims share the same tolling right); Korth v. Am. Fam. Ins. Co., 115 Wis.2d 326, 340 N.W.2d 494, 497 (1983) (construing Wisconsin's statutes of limitations in concluding that the parents' claim period was tolled during the period that the child's claim was tolled). If the General Assembly wants to alter the relevant statutes of limitations, that is a policy decision well within its discretion. As we noted in Elgin, that has not happened. 994 P.2d at 416.
¶61 Indeed, though the majority contends that the legislature has never adopted the common law rule and accordingly the decision today is consistent with the legislature's other policy choices, maj. op. ¶ 38, the legislature has determined that the common law generally prevails, § 2-4-211, C.R.S. (2021), thus compelling this court to construe alterations strictly and "only recognize changes that the General Assembly has expressly mandated or necessarily implied by subsequent legislation," Oram v. People, 255 P.3d 1032, 1036 (Colo. 2011), as modified on denial of reh'g (Aug. 1, 2011). As the General Assembly has determined, and as we have recognized many times before, we should not be making significant policy changes through the guise of reconsidering common law precedent. See, e.g., Clancy Sys. Int'l., Inc. v. Salazar, 177 P.3d 1235, 1237 (Colo. 2008) (recognizing that because the General Assembly "has chosen to give the common law of England full force until repealed by legislative authority," "courts will not lightly presume legislative intent" to modify the common law (citing section 2-4-211 )).
II. It is Far From Clear that Abandoning Precedent Will Do More Good Than Harm
¶62 The majority engages in this policy-making to fix a perceived deficit in the ability of the state's Medicaid program to protect "the public fisc." Maj. op. ¶ 41. For two reasons, I am unpersuaded that because of some gaps in reimbursement we should abandon precedent and reject principles of stare decisis. First, that fix is not ours to make. And second, I fear that the majority's method for making that fix —by creating a co-owned claim and dramatically extending the statute of limitations — invites a considerable range of unintended consequences.
¶63 As to the first point, it is not our role to improve a legislative and administrative landscape that does not always lead to reimbursement of third-party payors. The majority asserts that we should abandon the common law rule because extending the statute of limitations on claims for medical expenses will mean that the state's Medicaid program will be more likely to be reimbursed when it provided benefits that covered the medical expenses. Maj. op. ¶¶ 41-42. While I agree that it would be ideal if Medicaid were reimbursed each time a tortfeasor caused injury that led to medical expenses for which the state program paid, I do not believe that this laudable goal is sufficient reason to abandon stare decisis and engage in a policy-making exercise that is more appropriately the province of the legislature.
¶64 The "realities of the health care economy," maj. op. ¶ 26 —that private insurance or government-provided insurance may often be the entity providing payment for a child's injury-related medical expenses —may support a strong argument for allowing insurers to collect against a third-party tortfeasor without having to rely on the parents to bring suit within the legislatively established statute of limitations for their claims. But those realities do not explain why this court should create a new indefinite statute of limitations for claims for medical expenses provided to a minor child. Again, these are issues that should be addressed with a legislative response.
¶65 Second, I fear that the majority's new rule will have a wide range of unintended consequences. Perhaps most importantly, as discussed above, some states have recognized that a child has a right to recover medical expenses because the law in those states makes the child as liable for their medical expenses as the parents. That has not been the law in Colorado. But after this opinion, it will certainly be reasonable to assume that it is. After all, while the immediate impact of this decision in the context of this case is the extension of the statute of limitations, we are effectuating that change by granting ownership of the claim for medical expenses to Alexander. Ownership of a claim for expenses flows from responsibility for those expenses —hence our pre-existing exceptions to the common law rule. What will it mean for Colorado children in Alexander's position that they bear responsibility for their medical expenses? I don't know and neither does the majority. But child liability is just one of the many potentially worrisome consequences of this abandonment of stare decisis.
¶66 On its face, the majority's rule appears simple; it allows "both parents and their unemancipated minor child to recover damages for pre-majority expenses as long as no double recovery is permitted." Maj. op. ¶ 45. But lurking behind it is a great deal of uncertainty. In this context of a co-owned claim, what precisely is "double recovery"? If the parents of a minor bring a claim within the two-year statute of limitations and receive future medical expenses, but the calculation of future expenses proves too low, could the minor subsequently sue to recover medical expenses above and beyond the initial award? If the claims of the parents and the minor's claims are truly separate, as we have held that they are, Elgin, 994 P.2d at 416, each has a right to bring suit on them, so a court might be able to avoid duplicative recovery, but a potential defendant could easily face duplicative litigation. This uncertainty about how the rule will operate on the ground may well fuel an explosion of difficult litigation.
¶67 Further, the effective establishment of an indefinite, potentially two-decades-long statute of limitations on these claims means that claims for medical expenses may often be litigated as stale claims. Records could be gone. Memories will have faded. Experts will have to opine on decades-old standards of care in fast-changing industries. Statutes of limitations exist precisely to avoid these challenges.
¶68 The majority tries to dispense with these concerns by noting that, under current law, minors can bring claims for pain and suffering and for future economic damages — including future medical expenses — after they turn eighteen and asserts that "adding one category of damages" to these others is not a significant alteration of the legal landscape. Maj. op. ¶ 35. This assertion ignores the realities of how the particular type of damages at issue here —medical expenses —are treated under current Colorado law. Because of Colorado's collateral source rule, a plaintiff claiming medical expenses as an element of damages is permitted to introduce evidence of the billed medical expenses even though what was actually paid most often bears no relationship to what was billed.3 See Wal-Mart Stores, Inc. v. Crossgrove, 2012 CO 31, ¶¶ 21-22, 276 P.3d 562, 567 (describing "modern healthcare billing practices" of accepting payments that are "significantly less" than amounts billed); Volunteers of Am. Colo. Branch v. Gardenswartz, 242 P.3d 1080, 1085 (Colo. 2010). And the defendant is prohibited from introducing any evidence of the amount that was actually paid for medical expenses. See Sunahara v. State Farm Mut. Auto. Ins. Co., 2012 CO 30M, ¶ 15, 280 P.3d 649, 654 ; Crossgrove, ¶¶ 20-22, 276 P.3d at 567-68 (barring evidence that $40,000 was paid to satisfy medical bill of $242,000). Even post-verdict the defendant typically cannot reduce liability with evidence of amounts third parties paid to satisfy bills. § 13-21-111.6, C.R.S. (2021); Gardenswartz, 242 P.3d at 1084 ; Pressey, ¶¶ 13-16. The collateral source rule thus puts defendants like Dr. Bianco at a disadvantage as they try to explain why the reasonable value of the medical expenses is not actually the billed amount. That disadvantage is only exacerbated by the passage of time — explaining the reasonableness of medical costs from twenty years ago is more challenging than explaining the reasonableness of more recent costs.
¶69 For these reasons, medical expense damages are different from the damages currently available to an injured child if they bring a suit when they reach majority. Importantly, a number of states that do not apply the common law rule at issue today have also modified the collateral source rule to allow evidence of amounts paid to show reasonable value of medical expense damages. See Mo. Rev. Stat. § 490.715 (2021) ; Patchett v. Lee , 60 N.E. 3d 1025, 1033 (Ind. 2016) ; Howell v. Hamilton Meats & Provisions, Inc., 52 Cal.4th 541, 129 Cal.Rptr.3d 325, 257 P.3d 1130, 1138-40 (2011) ; Moorhead v. Crozer Chester Med. Ctr., 564 Pa. 156, 765 A.2d 786, 789 (2001), abrogated on other grounds by Northbrook Life Ins. Co. v. Com., 597 Pa. 18, 949 A.2d 333 (2008). Several of the states have abandoned the collateral source rule in the particular context of medical malpractice cases. See, e.g., Ariz. Rev. Stat. § 12-565 (2021); Cal. Civ. Code § 3333.1 (2021) ; 40 Pa. Con. Stat. § 1303.508 (2021); 9 R.I. Gen. Laws § 9-19-34.1 (2021).
¶70 Perhaps even more important, many of the states that permit a minor to recover medical expenses on their own behalf do not have a statute of limitations like Colorado's, which tolls the limitations period until the child reaches eighteen. See, e.g., Cal. Civ. Proc. Code § 340.5 (2021) ("[Medical malpractice] [a]ctions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period"); 18 Del. Code Ann. § 6856 (2021) (creating general two-year statute of limitations for medical malpractice actions but allowing a minor under the age of six to bring suit within the general limitations period or until the minor's sixth birthday, whichever is later); 735 Ill. Comp. Stat. 5/13-212(b) (2021) (establishing an eight-year repose period for actions brought by minors arising out of patient care); Ind. Code § 34-18-7-1(b) (2021) (creating a general two-year limitations period for actions against a health care provider but allowing a minor under six years of age to file suit up until their eighth birthday). Indeed, a majority of states have a much shorter effective statute of limitations on medical malpractice claims for injuries to minors than Colorado. See Medical Malpractice Statutes of Limitation Minority Provisions , 71 A.L.R. 5th 307 (1999) (collecting cases discussing minority limitation provisions).
¶71 Given the rest of Colorado's legal landscape, the court's decision today to effectively abandon the legislatively determined two-year statute of limitations on claims against medical providers will almost certainly increase the costs of malpractice insurance and litigation in the state, and therefore healthcare costs generally.
¶72 The majority may be right that these predictions are too gloomy. We will not know the precise impact of this change on the health care system for some time. We know right now, however, that the decision to abandon stare decisis has a destabilizing impact on the legal system. Our traditional reluctance to abandon precedent stems from a recognition that stare decisis "promotes evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Payne v. Tennessee , 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Today, the majority abandons a longstanding precedent without sufficient justification. I respectfully dissent.
¶73 I am authorized to state that CHIEF JUSTICE BOATRIGHT and JUSTICE MÁRQUEZ join in this dissent.
1 The precise issues on which we granted certiorari were framed as follows:
1. Whether the court of appeals erred in concluding that the Department of Healthcare Policy and Financing does not have a valid lien against the minor child plaintiff's recovery.
2. Whether this court should abandon the common law rule that tort damages for medical expenses incurred by an unemancipated minor may be recovered only through a derivative claim brought by the minor's parents.
2 Section 2-4-211, C.R.S. (2021), which no party raised in this case, does not suggest that the legislature has tacitly adopted the common law rule. It is not clear to us that that statute, which adopts portions of the common law of England in existence prior to 1607, at least until repealed by legislative authority, id., even applies here, see Lovato v. Dist. Ct., 198 Colo. 419, 601 P.2d 1072, 1075 (1979) (recognizing "that the statutory adoption of the common law is limited to the extent that it is reasonable to apply the English common law to the needs and conditions of our state"). Nor have we ever construed this statute to preclude us from departing from existing precedent in appropriate cases. See, e.g., Lobato v. State, 218 P.3d 358, 370 (Colo. 2009) ("Colorado courts are common law courts and, as such, possess jurisdiction to construe the common law unless the General Assembly acts to the contrary."). Indeed, we have chosen to depart from existing common law rules when we have become convinced that those rules were originally erroneous or no longer sound because of changing conditions, and when more good than harm will come from departing from our precedent. See, e.g., People v. Novotny, 2014 CO 18, ¶ 27, 320 P.3d 1194, 1203 (overruling the automatic-reversal rule for erroneously denied challenges for cause); People v. LaRosa, 2013 CO 2, ¶ 31, 293 P.3d 567, 575 (abandoning the court-made corpus delicti rule because sound reasons existed for doing so); Bedor v. Johnson, 2013 CO 4, ¶¶ 34-35, 292 P.3d 924, 931 (abolishing the court-made sudden emergency doctrine because its misleading characteristics greatly outweighed its minimal utility). We perceive no good reason to call into question any of these cases, or others like them, here.
1 Though HCPF asserted it had a lien under section 25.5-4-301(5)(a), C.R.S. (2017), to recover the $54,791.17 in medical claims HCPF had paid on behalf of Alexander, that lien was found to be invalid. HCPF did not, despite its assertion, have the automatic statutory right to seek reimbursement for past medical expenses simply because Alexander now had a judgment in his favor, given that Alexander could not recover for the medical expenses that his parents paid, and the judgment awarded only future, post-majority medical expenses. Rudnicki v. Bianco, No. 18CA0215, ¶¶ 35-43 (June 6, 2019) ; see generally Ark. Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006) (ruling that federal Medicaid laws limit amounts state can recover from third-party payments to Medicaid recipients). Moreover, the record does not support a finding of any other obligation to pay medical expenses to any party. While we granted certiorari on the question of whether the court of appeals erred in invalidating the Medicaid lien, the majority purports today not to reach that question "such that an exception to the common law rule applies." Maj. op. ¶ 47. Notably, however, the majority removes the constraint on HCPF from seeking reimbursement because — as of today — Alexander has a right to the damages for past-medical expenses, and Dr. Bianco will be liable for them.
2 This actually seems to be true of more than six of the cited cases. Indiana, for example, has simply never applied the same common law rule. See e.g. Asher, 324 N.E.2d at 499 (citing Cent. Indiana Ry. Co. v. Clark, 63 Ind.App. 49, 112 N.E. 892, 893 (1916) for the applicability of the doctrine of necessaries); White, 226 Cal. Rptr. at 745 (citing Bauman, 108 P.2d at 999 for the notion that children can be liable for medical expenses and so can recover for them).
3 As amicus Children's Hospital explains in its briefing, most hospitals use a chargemaster database —a comprehensive list of charges for every supply or service a hospital might provide in serving a patient —in producing a "bill" for medical services. Those chargemaster charges, however, are not actually the amounts paid by Medicare or Medicaid or by most private insurance companies, which negotiate different rates.